Hillary P. Carls
Sherine D. Blackford
BLACKFORD CARLS P.C.
602 W. Lamme Street
Bozeman, MT 59715
406.577.2145
406.219.0256 (fax)
carls@blackfordcarls.com
sherine@blackfordcarls.com
*Attorneys for Plaintiffs & Putative Class*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| Catherine Cole, Barbara Koostra, Mary-Ann Sontag Bowman, and Rhondie Voorhees, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Montana University System, University of Montana-Missoula, and John Doe Defendants 1-50,<br><br>Defendants. | CV-21-88-M-BMM<br><br>**Plaintiffs' Brief in Response to Defendants' Motion for Partial Dismissal (Pursuant to Rule 12(b)(6))** |

Plaintiffs, Catherine Cole, Barbara Koostra, Mary-Ann Sontag Bowman, and

Rhondie Voorhees, individually and on behalf of all others similarly situated, by

and through their counsel of record, Hillary P. Carls and Sherine D. Blackford of

Blackford Carls P.C., files their brief in response to Defendants' Motion for Partial

Dismiss [sic] (Pursuant to Rule 12(b)(6)) (Oct. 18, 2021) (Doc. 8) and Defendants'

Brief in Support of Motion for Partial Dismissal (Oct. 18, 2021) (Doc. 9)

(collectively "Motion to Dismiss").

## Table of Contents

Table of Authorities.................................................................................2

Introduction .........................................................................................5

Procedural Background ...........................................................................6

Legal Standard ......................................................................................6

Complaint Allegations ............................................................................7

Argument ............................................................................................10

  1.  Adverse Action.............................................................................12

  2.  Breach of Covenant of Good Faith and Fair Dealing ..................................19

  3.  Discriminatory Practice or Policy & Hostile Environment...........................19

  4.  Declaratory and Injunctive Relief .....................................................20

  5.  Leave to Amend ..........................................................................22

Conclusion..........................................................................................24

Certificate of Compliance.......................................................................25

## Table of Authorities

**Cases**

*Aguilar v. Boulder Brands, Inc.,*
    2014 WL 4352169 (S.D. Cal. 2014) ………….…………….…………23

*Bell Atlantic Corporation v. Twombly*,
    550 U.S. 544 (2007)…………………………………………..6, 7, 23

*Broam v. Bogan*,
    320 F.3d 1023 (9th Cir. 2003)…………………………………………6

*Burton v. Board of Regents of University of Wisconsin System,*
    851 F.3d 690 (7th Cir. 2017)……………………………………16

*Campbell v. Hawaii Department of Education,*
    892 F.3d 1005 (9th Cir. 2018) ……………………………………..……20

*Cannon v. University of Chicago,*
    441 U.S. 677 (1979) …………………………………………………..…10

*Cavalier v. Catholic University of America,*
    306 F.Supp.3d 9 (D.D.C. 2018) …………………….…………………16, 17

*Emeldi v. University of Oregon,*
    698 F.3d 715 (9th Cir. 2012) ……………………………………11, 14, 17

*Finch v. Xavier University,*
    689 F.Supp.2d 955 (S.D. Ohio 2010) ………………....……………….13

*Franklin v. Gwinnett County Public Schools,*
    503 U.S. 60 (1992)……………………………………………………………21

*Freyd v. University of Oregon,*
    990 F.3d 1211 (9th Cir. 2021) ……………………………………12, 13

*Guimaraes v. SuperValu, Inc.,*
    674 F.3d 962 (2nd Cir. 2012) ……………………………….………17, 18

*Hiatt v. Colorado Seminary,*
    858 F.3d 1307 (10th Cir. 2017) …………………………………13, 14, 17

*Jackson v. Birmingham Bd. of Educ.,*
    544 U.S. 167 (2005) ……………………………………………..…Passim

*Lopez v. Smith,*
    203 F.3d 1122 (9th Cir. 2000)……………………………….…7, 22, 23

*Nelson v. University of Maine System,*
    923 F.Supp. 275 (D. Maine 1996) …………………………………………13

*Ollier v. Sweetwater Union High School District,*
    768 F.3d 843 (9th Cir. 2014) ……………………………..…21, 22

*Reece v. Pocatello/Chubbuck School Dist. No.* 25,
713 F.Supp.2d 1222 (D. Idaho 2010) …………………….………………..…14

*Yusuf v. Vassar College*,
35 F.3d 709 (2nd Cir. 1994) …………………………………………….………21

**Statutes**

20 U.S.C. § 1681 …………………………………………………………………Passim

28 U.S.C. § 2201 …..………………………………………………………20, 21

**Rules of Civil Procedure**

Federal Rule of Civil Procedure 8………………………………...……………….23

Federal Rule of Civil Procedure 12……………………………...……………….6, 7

Federal Rule of Civil Procedure 15……………………………...…………….22, 23

Federal Rule of Civil Procedure 23……………………………...……….20, 21

Federal Rule of Civil Procedure 57……………………………...……20, 21

Federal Rule of Civil Procedure 65……………………………………………….21

**Other Authorities**

Jessica Nordell, *This Is How Everyday Sexism Could Stop You From Getting that Promotion*, N.Y. TIMES, Oct. 14, 2021, *available at* https://www.nytimes.com/interactive/2021/10/14/opinion/gender-bias.html…...7, 8

University of Montana, College of Health, School of Social Work, About Us, Faculty and Staff, *available at* https://health.umt.edu/socialwork/About%20Us/Faculty%20and%20Staff/default.php………………………….......………………………………………………………9

## Introduction

Title IX of the Education Amendments of 1972 ("Title IX") provides:

No person in the United States shall, *on the basis of sex*, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance ….

20 U.S.C. § 1681 (emphasis added). The plain language of Title IX prohibits gender discrimination.

This lawsuit is about the persistent culture and practice at the University of Montana—Missoula ("UM") that discriminates against women and denies women the benefits of UM's educational programs "on the basis of sex." This lawsuit is about UM and the Montana University System ("MUS") (collectively "Defendants") violating Title IX's broad sweeping prohibition of gender discrimination at educational institutions. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005).

While the Defendants attempt to minimize and individualize its impact on Mary-Ann Sontag Bowman, PhD., the Defendants have discriminated against Dr. Sontag Bowman "on the basis of sex" denying her benefits at UM. The factual disputes raised by the Defendants should be resolved by a jury, not a motion to dismiss.

\\\   \\\   \\\

## Procedural Background

On August 4, 2021, Plaintiffs filed their Complaint & Jury Trial Demand

(Aug. 4, 2021) (Doc. 1).  On August 19, 2021, Plaintiffs filed their First Amended

Complaint, Request for Class Certification, & Jury Trial Demand (Aug. 19, 2021)

(Doc. 5) ("Am. Compl." or "Amended Complaint").  In addition to the subject

Motion to Dismiss, on October 18, 2021, Defendants filed Defendants' Answer

and Jury Demand (Oct. 18, 2021) (Doc. 10).

A hearing on the Motion to Dismiss is scheduled for December 1, 2021,

along with the preliminary pretrial conference.

## Legal Standard

When considering a "dismiss[al] under Federal Rule of Civil Procedure

12(b)(6) for failure to state a claim upon which relief can be granted, '[a court]

must assume the truth of the material facts as alleged in the complaint." *Jackson*,

544 U.S. at 171 (quoting case). The Ninth Circuit has explained:

> *Rule 12(b)(6) motions are viewed with disfavor*. Dismissal without
> leave to amend is proper only in "extraordinary" cases. When ruling
> on a 12(b)(6) motion, the complaint must be construed in the light
> most favorable to the plaintiff. The court must accept as true all
> material allegations in the complaint, as well as any reasonable
> inferences to be drawn from them.

*Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) (emphasis added) (citations

omitted).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain

statement of the claim showing that the pleader is entitled to relief,' in order to

'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). To survive Rule 12(b)(6), a complaint must plead sufficient "fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting case).

The Ninth Circuit explains that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting case).

> [L]eave to amend should be freely granted "when justice so requires." Although Rule 15(a) gives the trial court discretion over this matter, we have repeatedly stressed that the court must remain guided by "the underlying purpose of Rule 15 … to facilitate decision on the merits, rather than on the pleadings or technicalities."

*Id*. at 1127 (citations omitted).

### Complaint Allegations

Plaintiffs allege that UM "fostered a 'good ol' boys club' culture" favoring men, to the exclusion of women, which created a discriminatory and hostile educational environment to the detriment of all Plaintiffs, including Dr. Sontag Bowman, and putative class members. Am. Compl. ¶¶ 14, 23; *see, e.g.,* Jessica

Nordell, *This Is How Everyday Sexism Could Stop You From Getting That Promotion*, N.Y. TIMES, Oct. 14, 2021, *available at* https://www.nytimes.com/interactive/2021/10/14/opinion/gender-bias.html.  Even when presented with ample reason to learn and heal from the past, and improve its relationship with and treatment of women, UM chose leadership that continued the disparate treatment of women.  *See id*. ¶¶ 25-45.  UM's actions created an environment where: (a) success for women is dictated by appearance. *See id*. ¶ 35; (b) women are encouraged to remain quiet and not criticize, rather than speak truth to power, or face potential consequences. *See id*. ¶¶ 36-37; (c) women are "unreasonably contradicted and questioned." *Id*. ¶ 38; and (d) women are prohibited from receiving leadership opportunities. *See id*. ¶ 39.

Dr. Sontag Bowman, like the other named Plaintiffs and putative class members, experienced and spoke out about UM's culture and practices of gender discrimination.  *See id*. ¶¶ 96-101.  Dr. Sontag Bowman has long been vocal about UM's gender discrimination, including, but not limited to: (a) hiring a young male president, who presented the Defendants with an inaccurate resume; and (b) promoting male applicants without considering other qualified candidates or a diversity plan. *See id*. ¶¶ 96, 100.

Defendants discriminated against Dr. Sontag Bowman when UM's leadership encouraged and selected the only male faculty member to continue to

lead the School of Social Work. *See id.* ¶ 95.[1]  The consequence of UM's decision was that "women need not apply…."  *See id.* ¶ 96.  UM discouraged female applicants from applying by preemptively selecting their preferred male chair. *See id.* ¶ 97. Dr. Sontag Bowman not only advocated for herself when alerting UM to its discriminatory conduct, Dr. Sontag Bowman advocated for her female colleagues. *See id.* ¶ 96.

Despite UM prohibiting Dr. Sontag Bowman from advancing in her career, she still faces the threat of losing her job for speaking out.  *See id.* ¶ 102.  To remain employed, Dr. Sontag Bowman must accept that her career has hit a brick wall. To remain employed, Dr. Sontag Bowman must accept that she will finish her profession at an institution that prematurely and wrongly limited her opportunities to lead. To remain employed, Dr. Sontag Bowman must accept that she has been, and continues to be, wrongly called a "bully" because UM fails to properly compensate her. *See id.* ¶ 104.  While Dr. Sontag Bowman's male colleagues professionally thrive at UM, she cannot. *See id.* ¶¶ 106-07.

The Defendants subjected Dr. Sontag Bowman, as well as the named Plaintiffs and putative class members, "to unwelcome harassment, retaliation, and humiliation, 'on the basis of sex,' with such severity, pervasiveness, and objective

---

[1] In 2020, the School of Social Work had only one male faculty member.  The School of Social Work now has two male faculty members. *See* University of Montana, College of Health, School of Social Work, About Us, Faculty and Staff, available at https://health.umt.edu/socialwork/About%20Us/Faculty%20and%20Staff/default.php.

offensiveness that it created an abusive work environment and interfered, and continues to interfere, with [her] work performance." *Id*. ¶ 185.  UM failed to remedy the hostile environment.  *See id*. ¶¶ 189-90, 195.  The Defendants subjected Dr. Sontag Bowman to "adverse employment actions…" that her male colleagues did not experience—UM invited a male colleague to lead, while Dr. Sontag Bowman and the remainder of her female department were overlooked. *See id*. ¶¶ 95, 192, 193.

While the Defendants seek to isolate, individualize, and minimize Dr. Sontag Bowman's allegations, Defendants discriminated against her, retaliated against her, and created a hostile work environment for her.

## Argument

Title IX provides:

> No person in the United States shall, *on the basis of sex*, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance ….

20 U.S.C. § 1681 (emphasis added).  The United States Supreme Court has explained that Title IX "broadly prohibits a funding recipient from subjecting any person to 'discrimination' 'on the basis of sex.'"  *Jackson*, 544 U.S. at 173.  "Not only the words and history of Title IX, but also its subject matter and underlying purposes, counsel implication of a cause of action in favor of private victims of discrimination." *Cannon v. University of Chicago*, 441 U.S. 677, 709 (1979).

In *Jackson*, the United States Supreme Court explained "the text of Title IX prohibits a funding recipient from retaliating against a person who speaks out against sex discrimination, because such retaliation is intentional 'discrimination' 'on the basis of sex.'" 544 U.S. at 178; *see also Emeldi v. University of Oregon*, 698 F.3d 715, 724 (9th Cir. 2012). "Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action. Retaliation is, by definition, an intentional act. It is a form of 'discrimination' because the complainant is being subjected to differential treatment." *Jackson,* 544 U.S. at 173-74 (citing cases). "[R]etaliation claims extend to those who oppose discrimination against others." *Id*. at 180. "[D]iscrimination means 'less favorable' treatment." *Id*. at 174 (quoting case). "'Discrimination' is a term that covers a wide range of intentional unequal treatment; by using such a broad term, Congress gave the statute a broad reach." *Id*. at 175 (citing case).

It is clear that Dr. Sontag Bowman's claims survive with a simple reading of Title IX. Title IX prohibits discrimination "on the basis of sex." Discrimination is "less favorable" and "unequal" treatment than others. Here, UM recruited and invited a male candidate to lead the School of Social Work. UM did not afford this favorable treatment to the female members of the School of Social Work, including Dr. Sontag Bowman. *See* Am. Compl. ¶¶ 92-98. The women were treated less

favorably, and unequal, to the men.  Under the plain language of Title IX, Dr. Sontag Bowman's allegations state a cognizable claim of gender discrimination.

## 1. <u>Adverse Action</u>

The Defendants attempt to recharacterize and ignore the totality of the Amended Complaint's allegations, arguing that Dr. Sontag Bowman's claim fails because she did not apply for a position after the Defendants had recruited and selected their chosen male candidate.  Ultimately, the Defendants solely argue that Dr. Sontag Bowman did not experience an adverse action necessary to prove discrimination and retaliation because she did not apply for the position she would not have received. Defendants effectively argue that women are responsible for the injustice they experience. Title IX law does not support this conclusion.

Under Title IX, the Plaintiffs, including Dr. Sontag Bowman, bring claims under the plain language of the statute based on UM's discrimination, retaliation, and a hostile work environment.

"[A] prima facie case of discrimination" requires a plaintiff to show: "that '(1) [s]he is a member of a protected class; (2) [s]he was qualified for h[er] position; (3) [s]he experienced an *adverse employment action*; and (4) similarly situated individuals outside h[er] protected class were treated more favorably." *Freyd v. University of Oregon*, 990 F.3d 1211, 1228 (9th Cir. 2021) (emphasis added) (quoting case).

"[A] prima facie case of retaliation" requires a plaintiff to show: "(a) that he or she was engaged in protected activity, (b) that he or she suffered an *adverse action*, and (c) that there was a causal link between the two." *Emeldi*, 698 F.3d at 724 (emphasis added) (citing case). Importantly, "a plaintiff need only make a minimal threshold showing of retaliation." *Id.*; *see also Finch v. Xavier University*, 689 F.Supp.2d 955, 965 (S.D. Ohio 2010) ("The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met.").

Both claims for discrimination and retaliation under Title IX require Dr. Sontag Bowman to allege that the Defendants subjected her to an adverse action. Dr. Sontag Bowman has experienced, and continues to experience, adverse actions due to the conduct of the Defendants.

 "An adverse employment action need not rise to the level of discharge to be actionable. It must, however, at a minimum, impair or potentially impair the plaintiff's employment in some cognizable manner." *Nelson v. University of Maine System*, 923 F.Supp. 275, 281 (D. Maine 1996).

> For discrimination claims, "[a]n adverse employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." "[A] mere inconvenience or an alteration of job responsibilities" does not qualify as an adverse action.

> For retaliation claims, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable

worker from making or supporting a charge of discrimination.  The action must be materially adverse "to separate significant from trivial harms," such as "petty slights, minor annoyances, and simple lack of good manners…."

*Hiatt v. Colorado Seminary*, 858 F.3d 1307, 1316 (2017) (citations omitted); *see also Emeldi*, 698 F.3d at 726.

It is an objective standard. But "[c]ontext matters. The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships…." "[A]n 'act that would be immaterial in some situations is material in others.'"

*Reece v. Pocatello/Chubbuck School Dist. No.* 25, 713 F.Supp.2d 1222, 1229 (D. Idaho 2010) (quoting *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 69 (2006)).

Here, Dr. Sontag Bowman was a qualified candidate for chair of the School of Social Work.  As a female, she is a member of a protected class.  Rather than have an open application process where no candidate for chair received preferential treatment, Defendants chose to not seriously consider other applicants.  Instead, Defendants recruited and selected the only male faculty member for chair of the School of Social Work. *See* Am. Compl. ¶ 95. As a result of Defendants' selection and preferential treatment of the only male faculty member, other applicants (all female) were discouraged. As alleged, Dr. Sontag Bowman experienced an adverse action because the Defendants did not afford her the opportunity to apply and objectively be considered for the chair position. *See id*. ¶¶ 95-98. Defendants

cannot fault Dr. Sontag Bowman for not applying for the position when Defendants had already determined another person would receive the position. As alleged, UM afforded her male colleague an opportunity and benefit that it did not provide women.

It is a materially adverse action to lose the opportunity for final promotions in a professional's career.  Losing leadership opportunities is not a simple inconvenience, trivial, petty slight, minor annoyance, or lack of good manners. A reasonable tenured professor would be dissuaded from challenging gender discrimination if the consequence was giving up the opportunity for promotion and to be chair. Losing the option and opportunity to lead her department is a significant change, equivalent to a failure to promote. At the end of her career, Dr. Sontag Bowman knows that she will have no future promotions. *See id*. ¶¶ 98, 103, 106-107.  It is a materially adverse action to sacrifice promotions at any point in a career, but especially at the end when you should benefit from receiving leadership positions after a long dedication to the profession. *See id*. ¶ 2.  The Defendants failure to provide equal opportunities for career promotion constitutes an adverse action.

UM has retaliated against Dr. Sontag Bowman by creating a brick wall in her career.  Dr. Sontag Bowman understands that the retaliation can get worse, with UM using pretext to terminate her position and/or alter her duties, threatening

her financial and employment security. To date, UM continues its adverse actions against Dr. Sontag Bowman, often forcing her to fight simply to be paid. *See id.* ¶ 104. Because of UM's "good ol' boys club" culture and practices of gender discrimination that adversely impact women across UM, Dr. Sontag Bowman has experienced discrimination and retaliation, and reasonably fears the persistent threat of future retaliation.  *See id.* ¶¶ 36-45, 94-104.

Defendants rely on *Burton v. Board of Regents of University of Wisconsin System*, analogizing that the criticisms and withdrawn support for initiatives experienced in *Burton* equate to Dr. Sontag Bowman's experience, making dismissal of her claims appropriate. However, the *Burton* plaintiff received tenure and a public ceremony celebrating her work, and could "point to no material consequences resulting from [the alleged incident]." 851 F.3d 690, 696-97, 699 (7th Cir. 2017). The *Burton* plaintiff received a promotion, an opportunity UM denied Dr. Sontag Bowman.  Here, UM's selection of the only male faculty member for chair is one of the many examples of UM's discriminatory culture favoring men to the detriment of women.  In doing so, UM limited and discouraged Dr. Sontag Bowman's opportunities for promotion. Dr. Sontag Bowman did not have a real choice to apply because doing so was futile.

Defendants also cite *Cavalier v. Catholic University of America*, analogizing that not screening a documentary, adjusting sexual assault advocacy events, and

not hiring the student's desired Deputy Title IX Coordinator to the failure to promote Dr. Sontag Bowman to chair.  Such analogy lacks merit. Logically, altering advocacy efforts is far different from failing to promote. Further, the *Cavalier* court explained that these actions would not discourage reporting an alleged rape. 306 F.Supp.3d 9, 36-37 (D.D.C. 2018).  To the contrary, Dr. Sontag Bowman's lost opportunity for promotion and to professionally lead the School of Social Work is a material adverse action, that would discourage others from reporting gender discrimination.

Similar to *Emeldi*, Dr. Sontag Bowman's "adverse action bears analogy to the concept of constructive discharge, in which a retaliating employer creates working conditions so 'extraordinary and egregious [as] to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job.'" 698 P.3d at 726 (quoting case).  "To established constructive discharge, a plaintiff must show that she had no other choice but to quit." *Hiatt*, 858 F.3d at 1318 (quoting case). Here, UM created conditions so extraordinary and egregious in recruiting and selecting the male candidate for chair, that no competent, diligent, and reasonable professor would apply for a filled position.  UM constructively failed to promote Dr. Sontag Bowman—she had no other choice but to not apply.

Defendants cite *Guimaraes v. SuperValu, Inc.*, arguing that Dr. Sontag Bowman cannot pursue a case of anticipatory retaliation.  First, Dr. Sontag

17

Bowman has been retaliated against for her complaints of gender discrimination. Any allegation similar to anticipatory retaliation is based on her understanding that Defendants' retaliatory adverse actions could increase, evidenced by UM's track record in its treatment of women who speak out.  Second, the Defendants' reliance on *Guimaraes* is misplaced. In *Guimaraes*, the adverse action (requested disciplinary proceedings) occurred before the plaintiff "engaged in protected conduct" (discrimination complaints). *See* 674 F.3d 962, 978-79 (8th Cir. 2012). The Second Circuit did not analyze this case under an anticipatory retaliation context, but rather the actual timing of the events. *See id*. *Guimaraes* is silent on Defendants' alleged theory of anticipatory retaliation and it does not apply here.

Regardless, Dr. Sontag Bowman was retaliated against after her long history of identifying and alerting the Defendants to gender discrimination.  This is evidenced by the continued disparate treatment she receives in comparison to her male colleagues, and the career brick wall UM has put in front of her. Nevertheless, as alleged, the persistent threat of additional retaliation continues today.

As with the claims of the other Plaintiffs and putative class members, Dr. Sontag Bowman has suffered an adverse employment action, while similarly situated men were treated favorably. The facts make clear that UM discriminated and retaliated against Dr. Sontag Bowman.

### 2.  **Breach of Covenant of Good Faith and Fair Dealing**

Dr. Sontag Bowman's claim for breach of the covenant of good faith and fair dealing is separate from her Title IX claim and not a derivative claim. The breach of covenant claim is based on the Plaintiffs' and putative class members' good faith belief that the Defendants would comply with Title IX's prohibition of gender discrimination in their contractual relationship with the Plaintiffs and putative class members. Like the other Plaintiffs and putative class members, Dr. Sontag Bowman has performed her duties at UM.  Despite this, the Defendants failed to act in good faith in complying with their obligations to not discriminate "on the basis of sex."  Stated another way, the Defendants breached Plaintiffs' and putative class members' good faith belief that they would not be subject to gender discrimination.

### 3.  **Discriminatory Practice or Policy & Hostile Environment**

Defendants conclusory state that Dr. Sontag Bowman did not allege a discriminatory practice or policy, or a hostile environment. However, the Amended Complaint includes these allegations. *See, e.g.,* Am. Compl. ¶¶ 185-195.  Title IX "broadly prohibits a funding recipient from subjecting any person to 'discrimination' 'on the basis of sex.'" *Jackson*, 544 U.S. at 173. A hostile environment is established when, because of sex, a plaintiff "was subjected to unwelcome conduct that was 'sufficiently severe or pervasive to alter the

conditions of [her] employment and create an abusive working environment.'"
*Campbell v. Hawaii Department of Education,* 892 F.3d 1005, 1016 (9th Cir.
2018) (quoting case).

The Amended Complaint comprehensively alleges Defendants'
discriminatory practices (culture) and the resulting hostile environment damaged
Dr. Sontag Bowman, the other Plaintiffs, and putative class members. *See, e.g.,*
Am. Compl. ¶¶ 2, 23, 36. Given that Defendants do not substantively explain their
conclusion regarding the claims of discriminatory practice and hostile
environment, to the extent those claims are subject to the Motion to Dismiss, such
request should be denied.

### 4. __Declaratory and Injunctive Relief__

The Defendants imply that the declaratory and injunctive relief requested by
the Plaintiffs and putative class members is only appropriate for Dr. Sontag
Bowman's claim because she is the only named Plaintiff still employed at UM.
However, Defendants fail to explain why the declaratory and injunctive relief is
contingent on Dr. Sontag Bowman's claims.

Declaratory and injunctive relief are available to all Plaintiffs and putative
class members in this matter. *See* Am. Compl. ¶¶ 167-170; Fed. R. Civ. P.
23(b)(2). Federal Rule of Civil Procedure 57 permits a Court to issue a declaratory
ruling determining "the rights and other legal relations of any interested party

seeking such declaration….” 28 U.S.C. § 2201(a); Fed. R. Civ. P. 57.  Federal Rule of Civil Procedure 65 permits a Court to issue an injunction as a form of equitable relief requiring a party to refrain from performing a particular act or ordering a party to perform a particular act.  *See* Fed. R. Civ. P. 65.  While Rule 65 allows a party to file a motion for a preliminary injunction or temporary restraining order pending trial, no such procedure is required when the relief sought is a final injunction. *See id.*; Fed. R. Civ. P. 23(b)(2).

Title IX affords plaintiffs both injunctive and monetary relief.  *See Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 76 (1992); *Yusuf v. Vassar College*, 35 F.3d 709, 714 (2nd Cir. 1994). Further, relative to the putative class, injunctive and declaratory relief are important considerations and remedies when certifying and defining the class. *See* Fed. R. Civ. P. 23(b)(2); Am. Compl. ¶¶ 167-170.

In *Ollier v. Sweetwater Union High School District*, the Ninth Circuit held that a court may issue an injunction based on past Title IX violations, even if the school could prove that it complied with Title IX at the time of trial.  768 F.3d 843, 864 (9th Cir. 2014). Additionally, the Ninth Circuit explained that “[t]he plaintiff class included *future* students, who were protected by the injunction” and the court found “no evidence” that the school had “addressed or implemented policies or procedures designed to cure the myriad areas of general noncompliance with Title

21

IX." *Id.* (emphasis in original).  Thus, the district court appropriately issued an injunction requiring the school to comply with Title IX.

Similarly here, even assuming Dr. Sontag Bowman's claims are dismissed, this Court can properly issue a final injunction in this matter based on past Title IX violations, for the benefit of the putative class members, which include past, present, and future employees, and because no evidence exists that the Defendants have cured their Title IX violations. Injunctive relief is proper and appropriate in this matter.

If Defendants were complying with Title IX, this lawsuit would not have occurred.  Plaintiffs' request that this Court order both declaratory and injunctive relief requiring the Defendants to comply with Title IX. Declaratory relief making clear that the Defendants have continued to violate Title IX is relief available to all Plaintiffs and putative class members. Even if Dr. Sontag Bowman's claims are dismissed, the remaining Plaintiffs and putative class members still properly request declaratory and injunctive relief. In sum, the declaratory and injunctive relief are not contingent on Dr. Sontag Bowman's claims.

## 5.  <u>Leave to Amend</u>

Alternatively, if Dr. Sontag Bowman's allegations require more specific statements, Dr. Sontag Bowman moves for leave to amend the Amended Complaint. *See Lopez,* 203 F.3d at 1127, 1130; Fed. R. Civ. P. 15(a)(2). The proper

procedure is not to dismiss Dr. Sontag Bowman's claims with prejudice, but to grant Plaintiffs leave to file an amended complaint. *See id*. If more specific allegations are required to further detail the adverse actions applicable to Dr. Sontag Bowman's claims, the Plaintiffs request leave to file an amended complaint.

As it relates to the claims of the putative class, in the event that Dr. Sontag Bowman's claims are dismissed with prejudice, the Plaintiffs request leave to file an amended complaint to add other named plaintiffs who remain employed at UM. *See* Fed. R. Civ. P. 15(a)(2); *Aguilar v. Boulder Brands, Inc.,* 2014 WL 4352169, at *7 (S.D. Cal. 2014) (quoting *Phillips v. Ford Motor Co.,* 435 F.3d 785, 787 (7th Cir. 2006) (discussing that substitution of unnamed class members for named plaintiffs who fall out of case for settlement or other reasons is normal and routine).

The notice pleading standard of Federal Rule of Civil Procedure 8(a) "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Bell Atlantic Corp.,* 550 U.S. at 585 (quoting case). Discovery in this case has not yet begun. Reasonably, discovery will reveal evidence in further support of Dr. Sontag Bowman's claims and will allows those claims to be decided on the merits.

Alternatively, granting Dr. Sontag Bowman leave to amend is appropriate.

**Conclusion**

This lawsuit is about the pervasive culture and practices at the University of Montana—Missoula that discriminate against women.  Title IX's broad prohibitions against gender discrimination apply to Dr. Sontag Bowman's claims. Dr. Sontag Bowman has suffered from adverse actions by the Defendants "on the basis of sex."  The Amended Complaint properly and comprehensively alleges the Defendants' adverse actions against Dr. Sontag Bowman.  Dr. Sontag Bowman, as well as the other named Plaintiffs and putative class members, have met the procedural requirements so that they can seek their day in court and have a jury decide whether the Defendants discriminated "on the basis of sex."

Plaintiffs request that the Court deny Defendants' Motion to Dismiss in total. Alternatively, the Plaintiffs seek leave to amend their complaint to cure any deficiencies.

Dated this 8th day of November, 2021.

BLACKFORD CARLS P.C.

/s/  Hillary P. Carls
Hillary P. Carls
Sherine D. Blackford
*Attorneys for Plaintiffs*

\\\   \\\   \\\

## Certificate of Compliance

Pursuant to Local Rule 7.1(d)(2)(E), I certify that this brief is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double spaced; and the word count calculated by Microsoft Word, is 4,633, excluding the caption, certificate of compliance, table of contents and authorities, exhibit index, if any, and certificate of service.

Dated this 8th day of November, 2021.

 /s/ Hillary P. Carls
Hillary P. Carls