Williams Law Firm, P.C.
Susan Moriarity Miltko, Esq.
James David Johnson, Esq.
Hannah I. Higgins, Esq.
235 E. Pine, P.O. Box 9440
Missoula, Montana 59807-9440
(406) 721-4350
susan@wmslaw.com
james@wmslaw.com
hannah@wmslaw.com
*Attorneys for Defendants*
*Montana University System, and*
*University of Montana–Missoula*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| CATHERINE COLE, BARBARA KOOSTRA, MARY-ANN SONTAG BOWMAN, and RHONDIE VOORHEES, | **CV 21-88-M-BMM** |
| Plaintiffs, | |
| -vs- | DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL DISMISSAL (Pursuant to Rule 12(b)(6)) |
| MONTANA UNIVERSITY SYSTEM, UNIVERSITY OF MONTANA–MISSOULA, and JOHN DOE DEFENDANTS 1-50, | |
| Defendants. | |

Defendants Montana University System and University of Montana-Missoula submit the following reply supporting its Motion for Partial Dismissal of the claim of Dr. Sontag Bowman.

## I.   INTRODUCTION

> *A recitation of facts without plausible connection to gender is not cured by labels and conclusory statements about sex discrimination.*
> *Austin v. University of Oregon,* 925 F.3d 1133, 1136 (9th Cir. 2019).

Plaintiffs' Response to Defendants' Motion for Partial Dismissal is *argumentum ad hominem*—attacking Defendants' character by presenting conclusory allegations that have no basis in truth or under the law. Indeed, these conclusory allegations merely attack Defendants rather than present valid argument opposing Defendants' motion. Significantly, Plaintiffs' allegations fail to set forth an actionable prima facie Title IX claim on behalf of Dr. Sontag Bowman.

Instead, Plaintiffs take a shotgun approach, essentially arguing that Dr. Sontag Bowman has an actionable claim under nearly every potential theory of recovery under Title IX, while failing to provide any factual support. Plaintiffs' grossly broad approach fails to articulate an actionable basis to support the clam in violation of Rule 8. *Litwak v. Tomko*, 2018 WL 1378633, at *5 (M.D. Pa. Mar. 19, 2018) (a shotgun pleading does not comply with the mandates of Rule 8.) As such, Defendants have attempted to distill Plaintiffs' allegations into the most plausible, potential claims under Title IX. In the end, however, Dr. Sontag Bowman's allegations are simply not actionable.

Critically, the lack of *any* legal authority to support Dr. Sontag Bowman's novel argument speaks volumes. Plaintiffs fail to cite a *single* case supporting the notion that a plaintiff's unilateral decision to not apply for an open position constitutes discrimination on behalf of the employer. Simply put, Plaintiffs' claims are limited to labels and conclusory statements about sex discrimination without plausible connection to gender. Dr. Sontag Bowman's claims should be dismissed.

## II.   LEGAL ANALYSIS

Plaintiffs fail to state a Title IX claim on behalf of Dr. Sontag Bowman. Plaintiffs' allegations fail to go beyond conclusory allegations to support a claim that is actionable. No court has held that a claimant's own decision to not apply for a promotion gives rise to an actionable adverse employment action on the part of the employer. Further, Plaintiffs' fleeting reference to other actionable legal theories under Title IX constitute unsupported conclusory allegations.

A.   Title IX prohibits three separate categories of discrimination: disparate treatment, disparate impact, and retaliation.

Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et. seq.* ("Title IX") prohibits discrimination on the basis of sex by educational institutions receiving federal assistance. 20 U.S.C. § 1681; *Emeldi v. University of Oregon*, 698 F.3d 715, 723–24 (9th Cir. 2012). Modeled after Title VI of the Civil Rights Act of 1964, Title IX recognizes three separate theories of discrimination: (1)

disparate treatment, (2) disparate impact, and (3) retaliation. Department of Justice, *Title IX Legal Manual* at IV.A. (hereinafter "*Manual*").

https://www.justice.gov/crt/title-ix#IV.%C2%A0%20Discriminatory%20Conduct

Disparate treatment, also referred to as "intentional" discrimination, under Title IX involves actions treating similarly situated persons differently on the basis of sex and requires intent. *Manual* at IV.A.1, n. 33. The "fundamental task" to establish disparate treatment is showing "that similarly situated individuals were treated differently because of . . . their sex. This requires that the decision maker was aware of the complainant's sex and took action at least in part based on that sex." *Id*. While Plaintiffs reference "disparate treatment" with respect to Dr. Sontag Bowman's claim, the allegations lack requisite factual pleadings in support.

The second type of discrimination, disparate impact, occurs when facially sex-neutral policies or practices have an adverse impact in effect. *Id*. at IV.A.2. Intent is not an element of this type of discrimination; rather, the focus is on the consequences of the policies and practices in action. *Id*. There must be a causal connection between the facially neutral policy and the adverse impact. *Id*. Here, Plaintiffs do not plead a policy or practice and raise no factual allegations to support a plausible claim on behalf of Dr. Sontag Bowman based on disparate impact.

Lastly, retaliation serves to protect the enforcement of a protected group's rights. *Id*. at IV.A.3. For retaliation, the underlying sex discrimination is irrelevant because the prohibited act is the retaliation itself. *Id*. Specifically, retaliation—such as intimidation, threats, coercion, or discrimination—is prohibited against any person who asserted their rights under Title IX, including filing complaints, reports, investigations, or otherwise. *Id*.  In this case, Plaintiffs claim Dr. Sontag Bowman experienced retaliation, but fail to provide any factual support.

Claims can be brought under any of the three theories, but the theories are separate and distinct, each requiring specific facts and legal argument to support each claim. *See generally*, *Manual*. So too, the different claims brought under specific discrimination theories also require specific facts and legal argument.

  B. <u>Rule 8(a) is the appropriate standard for pleadings under Title IX</u>.

While an employee plaintiff can allege multiple legal theories through Title IX, they must be based on more than just labels and conclusions. *Austin*, 925 F.3d at 1136 (citing *Yusef v. Vassar College*, 35 F.3d 709, 715 (2nd Cir. 1994)). Plaintiffs are obligated to provide the grounds of their entitlement to relief, and "a formulaic recitation of the elements of a cause of action will not do so." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555. The factual allegations—on the assumption that they are true—must sufficiently present a ***<u>nonspeculative</u>*** right to relief. *Id*.

Federal R. Civ. P. 8(a) is the "appropriate standard for reviewing a Rule 12(b)(6) motion to dismiss under Title IX." *Austin*, 925 F.3d at 1136. Pleadings must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "A pleading that offers 'labels and conclusions' or . . . 'naked assertions[s]' devoid of 'further factual enhancement'" cannot survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).

Defendants must be given fair notice of the basis of the claims against them under the notice pleading requirements of Rule 8(a), particularly in the context of Rule 12(b)(6) motions to dismiss under Title IX. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–14 (2002). In *Austin*, student athletes brought forward Title IX discrimination claims after being disciplined by a university for sexual assault, but failed to set forth "sufficient, nonconclusory allegations plausibly linking the disciplinary action to discrimination on the basis of sex." 925 F.3d at 1135–36, 1138. The athletes failed to provide an articulable basis for the alleged discrimination. *Id*. at 1138. For each claim, they stated the gravamen of the claim, but "fail[ed] to allege how this [was] so." *Id*. ("Just saying so is not enough.")

Here, Dr. Sontag Bowman's claims *do not* do "more than merely recite [her] conclusion that the complained-of conduct was discriminatory." *Yusuf*, 35 F.3d at 715. Plaintiffs' response is a restatement of different discrimination theories

6

without providing clarity to the specific claims brought by Dr. Sontag Bowman. (*See generally*, *Am. Compl.*) Yet, Plaintiffs fail to identify facts specific to Dr. Sontag Bowman such as to provide the Defendants with the requisite further factual enhancement required by *Ashcroft*. Like the student athletes in *Austin*, Dr. Sontag Bowman provides nothing more than conclusory allegations that could plausibly link Defendants' actions to discrimination on the basis of sex.

C.   <u>Plaintiffs fail to set forth actionable factual allegations with respect to any of Dr. Sontag Bowman's claims.</u>

To bring a Title IX claim, the plaintiff must plead that (1) the defendant is an educational institution receiving federal funding; (2) the plaintiff was subjected to discrimination under any educational program or activity; and (3) the discrimination was on the basis of sex. *Schwake*, 967 F.3d at 946. The latter elements encompass diverse claims of discrimination and require a showing of a plausible link between the discrimination and gender. *Jackson*, 544 U.S. at 183; *Austin*, 925 F.3d at 1138. Recognizing the prima facie elements established in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973) are an evidentiary standard, they are instructive regarding what a plaintiff must show to adequately state a claim.

Here, not only does Dr. Sontag Bowman have no articulable basis for the alleged discrimination as her allegations have no factual backing, but Plaintiffs appear to be unsure of the legal theory upon which their claim is based. Plaintiffs

conflate the three overarching discrimination theories by overlapping different claims that fall under different discrimination theories, despite the legal theories being separate and distinct. (*See generally*, *Am. Compl*.) Plaintiffs provide no guidance for what claims apply to Dr. Sontag Bowman or for how her claims equate to discrimination on the basis of sex. The result is a hodgepodge of allegations that fail to state factual allegations that establish any claim under a legally recognized theory. The Amended Complaint talks about Dr. Sontag Bowman individually and later alleges deliberate indifference, harassment, retaliation, abusive and hostile work environment, exclusion, disparate impact, and adverse action in the context of all Plaintiffs, without delineation of any factual allegations to Dr. Sontag Bowman or without explanation of how such claims would relate to Dr. Sontag Bowman in particular. (*Am. Comp.*, ¶¶ 88–108, 178–197). Plaintiffs' allegations are simply a composite of Title IX elements without laying out a cognizable claim.

Taking her allegations as true, Dr. Sontag Bowman pleads no facts establishing disparate treatment, disparate impact, or retaliation by Defendants. Dr. Sontag Bowman baldly alleges discrimination, hostile work environment, and harassment—which all fall under the umbrella of disparate treatment—and adverse employment action, which falls under both retaliation and disparate treatment.

However, none of the *factual* allegations set forth in the Amended Complaint establish an actionable Title IX claim.

        1.   *Dr. Sontag Bowman has no cognizable facts to establish disparate treatment by Defendants.*

Dr. Sontag Bowman offers only labels and conclusions, without any factual enhancement, to support her discrimination, hostile work environment, and harassment claims. The Ninth Circuit relies on the Title VII framework found in *McDonnell Douglas*, to establish an inference of disparate treatment. *Freyd v. University of Oregon*, 990 F.3d 1211, 1228–29 (9th Cir. 2021). A prima facie case of discrimination requires that the plaintiff show that (1) she is member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) similarly situated individuals outside of the protected class were treated more favorably. *Id*.; *McDonnell*, 411 U.S. at 802–04. An adverse material action is one that "materially affects the compensation, terms, conditions, or privileges of employment. *Campbell*, 892 F.3d at 1012.

Dr. Sontag Bowman has pled that she is a member of a protected class as a female, but her sufficient pleadings end there. For the remainder of Dr. Sontag Bowman's disparate treatment claims, she relies wholly on conclusory allegations. Specifically, Plaintiffs allege that Defendants chose to not seriously consider applicants other than the existing chair for the faculty chair position, precluding Dr. Sontag Bowman from "final promotions" and causing her to hit a metaphorical

"career ceiling." (*Am. Compl.* ¶ 106; Plaintiffs' Response, p. 15.) However, Dr. Sontag Bowman also pleads that she *did not even apply for the position*. (*Am. Compl.*, ¶ 97.) It is axiomatic that Dr. Sontag Bowman, by making the personal decision to not apply for the faculty chair position, does not establish intentional discrimination against women by Defendants.

Further, Plaintiffs' claim that "other applicants (all female) were discouraged" improperly states the pleaded facts, which do not show that *anyone* other than Dr. Sontag Bowman was discouraged. (*Plaintiffs' Response* at p. 14.) The Amended Complaint merely alleges that "at the encouragement of UM Leadership" the existing chair, who was male, applied for the chair position and Dr. Bowman *assumed* that this discouraged other female applicants from applying. (*Am. Compl.*, ¶¶ 95, 97.) These are merely speculative, conclusory allegations.

Plaintiffs also fail to show that similarly situated individuals were treated more favorably. Plaintiffs allege the male faculty member already serving in the faculty chair position sought a second term, thus establishing that the serving chair was not "similarly situated" to Dr. Sontag Bowman. (*Am. Compl.*, ¶ 95.) Plaintiffs assert the faculty chair position was "promotional" above Dr. Sontag Bowman's current position, but contrarily argue that the person already working in the position, who simply sought a second term, has the same standing as she does.

(*Plaintiffs' Response* at pp. 14–15.) The assertions are contradictory and mutually exclusive.

       2.   *Plaintiffs have not set forth a claim of disparate treatment based on alleged hostile work environment.*

The Ninth Circuit applies Tile VII standards to hostile work environment claims. *Oona R.-S.- by Kate S.*, 143 F.3d at 477; *Doe By and Through Doe v. Petaluma City School Dist.*, 949 F. Supp. 1415 (N.D. Cal. 1996). Under Title VII, a plaintiff must prove that (1) she was subject to gender-based harassment; (2) the harassment was so severe as to create an abusive work environment; and (3) the employer failed to remedy or prevent the hostile environment despite knowing of it. *Petaluma*, 949 F. Supp. at 1423. The work environment must be both subjectively and objectively abusive to constitute a hostile work environment. *Campbell*, 892 F.3d at 1016–17.

Beyond using the phrase "hostile work environment," Plaintiffs do not provide a short and plain statement of such a claim, as required by Rule 8(a). Plaintiffs' pleadings do not include any factual allegations that Dr. Sontag Bowman was subject to harassment or that harassment was so severe as to cause a hostile work environment. Plaintiffs plead nothing by the way of Defendants knowing of any harassment and failing to remedy it. Simply suggesting that Dr. Sontag Bowman has been called a bully does not rise to the level of subjective and

objective abuse necessary to establish a hostile work environment claim. (*Am. Compl.* ¶ 104.)

### 3. Dr. Sontag Bowman has no cognizable facts to establish retaliation by Defendants.

On its face, Sontag Bowman's real claim appears to assert that there has been retaliation against her because of her criticisms of Seth Bodnar. However, she fails to meet the Rule 8(a) pleading standards for retaliation as she fails to set forth an adverse employment action by the Defendants. The prima facie framework, adopted from the Title VII framework, requires that a plaintiff show: (1) she engaged in a protected activity; (2) she suffered an adverse action; and (3) that there was a causal link between the protected activity and the adverse action. *Emeldi*, 698 F.3d at 724. Under the law, an adverse action is met if a reasonable person would have found the challenged action to be materially adverse, including dissuading a reasonable person from making or supporting a discrimination charge. *Ollier v. Sweetwater Union High School Dist.*, 768 F.3d 843, 868 (9th Cir. 2014).

Here, there is no adverse action but simply the assertion that Dr. Sontag Bowman voluntarily did not apply for the faculty chair position. Plaintiffs simply plead that she did not apply for an employment position because someone else announced their application. (*Am. Compl.*, ¶¶ 95, 97.) A reasonable person would not find that an existing chair announcing he will seek reappointment and her personal decision to not apply for a job to be materially adverse. Even if Dr.

12

Sontag Bowman was engaged in a protected activity by criticizing Seth Bodnar and if her personal decision to not apply qualified as an adverse action, there is no causal link between those events. Dr. Sontag Bowman fails to plead a retaliation claim entirely.

Further, Plaintiffs' reliance on *Emeldi* and "constructive discharge" as an analogy to Dr. Sontag Bowman's voluntary decision to not apply for a position is without merit. In *Emeldi*, a Ph.D. candidate was prevented from completing her dissertation after the student could not find a faculty advisor for her dissertation, even after asking 15 faculty members. 698 F.3d at 722–23. Unlike the Ph.D. student's extensive action, Plaintiff overtly pleads she chose not to seek the faculty chair position.

> 4. *Dr. Sontag Bowman's claim of breach of the covenant of good faith and fair dealing has no merit and must be dismissed.*

Dr. Sontag Bowman fails to provide any authority to support her claim for Breach of the Covenant of Good Faith and Fair Dealing. Plaintiffs merely present a "a formulaic recitation of the elements of a cause of action" without providing any substantive factual allegations for support. *Twombly*, 550 U.S. at 555. Plaintiffs, without basis, imply that Title IX benefits were implied within the express terms of a contract, but fail to state under which clause or contract. (*Am. Compl.*, ¶ 202.) Notably, Title IX protections are not something granted by contract—they are

implied by statute. *See* 20 U.S.C. § 1681. A breach of contract cannot exist through alleged statutory violations.

Here, Plaintiffs' breach of the covenant claim is entirely derivative of her alleged Title IX claims. As the Title IX claim is not actionable, the subsequent derivative claim should also be dismissed.

### 5.   *Amendment of Plaintiffs' complaint is futile.*

Finally, Plaintiffs should not be granted leave to amend their complaint, as they have failed to even suggest any amendment to Dr. Sontag Bowman's claims and, taken the current allegations as true, any amendment would be futile.

While Federal Rule of Civil Procedure 15(a) allows that leave to amend should be freely given when justice requires, a district court has discretion to deny leave to amend where amendment of the complaint would be futile or would subject it to dismissal. *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991). An amendment to a complaint is futile "only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (overruled on other grounds by *Ashcroft*, 556 U.S. 662 (2009)).

Such is the case here. Plaintiffs cannot provide any set of facts that would constitute a valid and sufficient claim on behalf of Dr. Sontag Bowman. Plaintiffs have already pled that Dr. Sontag Bowman did not apply for the faculty chair

position, despite it being open. (*Am. Compl.*, ¶ 97.) Plaintiffs have already pled that the person who got the position was not similarly situated to Dr. Sontag Bowman. (*Id.*, ¶ 95.) Further, Plaintiff Bowman has already pled that she is a tenured *associate* professor, rather than a tenured *full* professor. (*Id.*, ¶ 88.) An amendment to the complaint would set forth no fact that would create such disparate treatment, disparate impact, retaliation, or breach of the covenant of good faith and fair dealing. For many of those claims, Plaintiffs have already pled the opposite. Taking her claims as pled as true, amendment would be futile. Having failed to even suggest what amendments may state a claim, a bald request for leave to amend should be denied.

## III.   CONCLUSION

For the foregoing reasons, Dr. Sontag Bowman's claims should be dismissed.

DATED this  22nd  day of  November , 2021.

/s/ Susan Moriarity Miltko

Susan Moriarity Miltko, Esq.
*Attorneys for Defendants Montana University System and University of Montana–Missoula*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing reply brief complies with the 3250 word limit of L.R. 7.1(d)(2)(B), in that it consists of  3159  words as calculated by Microsoft Word 2016, excluding the parts of the brief exempted by the rule; and with L.R. 1.5(a), in that it is double spaced except for quoted material and footnotes, and typewritten in 14-pt font size.

DATED this  22nd  day of   November  , 2021.

/s/ Susan Moriarity Miltko

Susan Moriarity Miltko, Esq.
*Attorneys for Defendants Montana University System and University of Montana*