# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

|  |  |
|---|---|
| CATHERINE COLE, BARBARA KOOSTRA, MARY-ANN SONTAG BOWMAN, and RHONDIE VOORHEES, | **CV-21-88-M-BMM** |
| Plaintiffs, | **ORDER** |
| v. | |
| MONTANA UNIVERSITY SYSTEM, UNIVERSITY OF MONTANA–MISSOULA, and JOHN DOE DEFENDANTS 1-50, | |
| Defendants. | |

## INTRODUCTION

Plaintiffs Catherine Cole, Barbara Koostra, Mary-Ann Sontag Bowman, and Rhondie Voorhees ("Plaintiffs") filed this action under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq. ("Title IX") against the Montana University System and the University of Montana ("Defendants"). (Docs. 1, 5.) Defendants filed a motion to dismiss for failure to state a claim pertaining to the claims of Plaintiff Mary-Ann Sontag Bowman ("Sontag Bowman"). (Doc. 18.) The Court held a hearing on the motion to dismiss on December 1, 2021. (Doc. 19.)

## BACKGROUND

Sontag Bowman alleges that Defendants discriminated against her on the basis of sex, in violation of Title IX. Sontag Bowman works as a tenured associate professor at the University of Montana's School of Social Work. (Doc. 5 at ¶ 88.) Sontag Bowman began working at the University of Montana in 2008, and consistently has remained in good standing with the University. (*Id.* at ¶ 90.)

The School of Social Work has just one male faculty member. (*Id.* at ¶ 95.) This male faculty member served as chairperson of the School of Social Work from 2015 to 2020. (*Id.*) Sontag Bowman alleges that the University of Montana's leadership encouraged the male faculty member to seek a second 5-year term in 2020. (*Id.*) Sontag Bowman alleges that the University of Montana made its preference for the male faculty member clear in an effort to discourage Sontag Bowman from applying. (*Id.* at ¶ 97.) Sontag Bowman stated in an email response, when informed of the University's preference, that "women need not apply is the bottom line." (*Id.* at ¶ 96.)

Sontag Bowman claims that she repeatedly has advocated against the University of Montana's disparate treatment of women. (*Id.* at ¶ 100-01.) Sontag Bowman identifies herself as a whistleblower to University of Montana's unequal gendered actions, and fears retaliation based on University of Montana's

"longstanding record of terminating female employees for speaking out." (*Id.* at ¶ 102).

## LEGAL STANDARD

### *Failure to state a claim*

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate under Rule 12(b)(6) where the complaint lacks sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hospital Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

To survive a Rule 12(b)(6) motion, the Complaint must contain sufficient factual matter to state a claim for relief that appears plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). A claim appears plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

When evaluating a Rule 12(b)(6) motion, the Court must accept all allegations of material fact contained in the complaint as true. *Johnson v. Lucent Technologies Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011). The Court does not weigh the facts at the Rule 12(b)(6) stage, but merely assesses the sufficiency of Plaintiff's allegations. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The Court must look

at the facts in the light most favorable to the Plaintiff when considering a motion to dismiss for failure to state a claim,. *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009).

*Title IX*

Title IX prohibits discrimination on the basis of sex by educational institutions receiving federal assistance. 20 U.S.C. § 1681; *Emeldi v. University of Oregon*, 698 F.3d 715, 723–24 (9th Cir. 2012). Courts have recognized three separate theories of discrimination under Title IX: (1) disparate treatment, (2) disparate impact, and (3) retaliation.

In order to establish a prima facie case of disparate treatment a plaintiff must show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) similarly situated men or white women were treated more favorably. *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).

To make a prima facie case of disparate impact, a plaintiff "must show that a facially neutral employment practice has a significantly discriminatory impact" upon a protected group. *Paige v. California*, 291 F.3d 1141, 1144 (9th Cir. 2002). "This showing consists of two parts: the plaintiff[ ] must demonstrate 1) a specific employment practice that 2) causes a significant discriminatory impact." *Id.* at 1145. The plaintiff also must establish that the challenged practice is either (a) not job related or (b) inconsistent with business necessity. 42 U.S.C. § 2000e-2(k)(1)(A)(i).

4

A prima facie case of Title IX retaliation requires a plaintiff to allege three elements: (1) the plaintiff was "engaged in [a] protected activity;" (2) the plaintiff "suffered an adverse action;" and (3) a "causal link" between the first two elements. *Emeldi v. University of Oregon*, 698 F.3d 715, 724 (9th Cir. 2012) (citing *Brown v. City of Tucson*, 336 F.3d 1181, 1192 (9th Cir. 2003)). Plaintiff must adequately plead that "a reasonable [person] would have found the challenged action materially adverse." *Id.* at 726.

## ANALYSIS

### I.  Plaintiff Sontag Bowman alleges sufficient facts to make a plausible Title IX claim.

Defendants argue that Sontag Bowman's Title IX claim is not actionable as a matter of law because the University of Montana took no adverse employment action against her. An "adverse employment action" proves a necessary element of disparate treatment or retaliation claims under Title IX. *See Emeldi v. Univ. of Oregon*, 698 F.3d 715, 724. Courts have defined an adverse employment action as a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *See e.g.*, *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1316 (10th Cir. 2017).

Defendants argue that Sontag Bowman cannot demonstrate an adverse employment action when Sontag Bowman failed to apply for the chairperson

position within the School of Social Work. (Doc. 9 at 12.) Defendants suggest that Sontag Bowman merely speculates she would have been denied the opportunity to be promoted due to her failure to have applied for the chairperson position. (*Id.*) Defendants contend that Sontag Bowman bases her claim only on her own decision not to apply, and that the University of Montana took no action. (*Id.*) Defendants cite *Burton v. Board of Regents of University of Wisconsin System,* 851 F.3d 690, 697 (7th Cir. 2017) (granting summary judgment) to support the proposition that an adverse employment action must rise past perceptions of discrimination or retaliation.

Defendants' argument fails to recognize that an adverse action need not be a formal rejection or dismissal, but can be the constructive equivalent. *See Emeldi*, 698 F.3d at 724. In *Emeldi*, the Ninth Circuit determined that the plaintiff had demonstrated an adverse action, even though she had not been formally dismissed from her Ph.D. program. *Id.* at 726. Emeldi was a Ph.D. student in the University of Oregon's College of Education. *Id.* at 721. Emeldi alleged that her relationship with her Ph.D. advisor soured due to his gender animus. *Id.* at 721. Emeldi's advisor resigned his position as her dissertation chair. *Id.* Emeldi asked fifteen other College of Education faculty to replace her former advisor, but none agreed to supervise her research, allegedly at the urging of Emeldi's former advisor. *Id.* Emeldi ultimately left the University of Oregon. *Id.*

The Ninth Circuit determined that, though Emeldi left voluntarily, Emeldi had established an adverse action because she "justifiably [felt] unable to complete the Ph.D. program." *Id.* The Ninth Circuit compared this type of adverse action to a constructive discharge, "in which a retaliating employer creates working conditions so 'extraordinary and egregious [as] to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job.'" *Id.* (quoting *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007)).

*Videckis v. Pepperdine University*, 150 F. Supp. 3d 1151 (C.D. Cal. 2015), provides another example of a constructive adverse action. In *Videckis*, plaintiffs Haley Videckis ("Videckis") and Layana White ("White") were former members of the Pepperdine University women's basketball team. 150 F. Supp. 3d at 1154. Staff of the women's basketball team came to the conclusion that Videckis and White were in a same-sex relationship. *Id.* Videckis and White alleged that members of the coaching staff harassed and discriminated against Videckis and White in an effort to force them to quit the team. *Id.* Videckis and White were effectively kept from participating with the basketball team when medical staff refused to clear them to play or practice. *Id.* Videckis and White based their claim for violation of Title IX upon alleged disparate treatment, harassment, and retaliation due to their sexual orientation. *Id.* The district court determined that prohibiting Videckis and White

from playing based on their sexual orientation, despite not removing them from the team, proved sufficient to raise a Title IX retaliation claim. *Id.* at 1162.

Sontag Bowman alleges sufficient facts to claim that the University of Montana created an application process for the chairperson of the School of Social Work where no reasonable female faculty member would have applied. The Complaint alleges that the University of Montana made plain its preference and preemptive selection of a male faculty member. Sontag Bowman claims that, because she could not have applied and objectively been considered for the chair position, she was constructively denied the opportunity for promotion based on her sex. These allegations qualify as a plausible claim to relief under Title IX. *See Emeldi*, 698 F.3d at 724. If the University of Montana would not have seriously considered other applicants, then whether Sontag Bowman's applied proves immaterial as long as Sontag Bowman would have applied given a reasonable opportunity to be considered. Sontag Bowman alleges that she would have applied given a reasonable opportunity. (Doc. 5 at 97.) At the pleadings stage, the Court does not weigh the facts to determine whether it was justifiable for Sontag Bowman not to apply for the chairperson position. *See Bell Atlantic Corp*, 550 U.S. at 556.

Defendants argue that Sontag Bowman has failed to plead sufficient facts to establish a Title IX claim. (Doc. 14 at 8-9.) This Court previously has determined that discrimination claims at the pleadings stage do not require the plaintiff to

"unearth smoking-gun evidence about the defendant's subjective state of mind." *Doe v. Mont. State Univ.*, No. CV-20-23-BU-BMM-JTJ, 2020 WL 7493128, at *6 (D. Mont. Dec. 21, 2020). The plaintiff in *Doe* alleged that she had been sexually assaulted at a fraternity house. *Id.* at *1. Montana State University's Office of Institutional Equity failed to investigate Doe's claims of sexual assault. *Id.* at *2. Doe claimed that Montana State University discriminated against women by (1) underfunding the Office of Institutional Equity; (2) deprioritizing cases denying female students access to educational opportunities or benefits, because female students were compelled to withdraw from school as a result of assault and MSU's failure to adequately respond; (3) dissuading victims from pursuing complaints; (4) imposing an unreasonably high burden of proof; and (5) violating the confidentiality of sexual assault victims. *Id.*

Montana State University argued that Doe's complaint failed to cite direct evidence of discrimination. The Court dismissed Montana State University's argument, because at the pleading stage "a court may infer discriminatory intent from circumstantial evidence [. . .] given the plaintiff's limited insight into the subjective mental state of a defendant." *Id.* at * 7 (citing *Rogers v. Lodge*, 458 U.S. 613, 618 (1982) (stating that "discriminatory intent need not be proved by direct evidence"); *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995)). Victims of discrimination seldom can prove their claim of discrimination by direct evidence, as

perpetrators of discrimination rarely leave "smoking gun" evidence attesting to discriminatory intent. *Id.* (citing *Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir. 1991)). Discrimination most often arises through "discreet manipulations," usually "hidden under a veil of self-declared innocence." *Id.*

Sontag Bowman's Complaint alleges a plausible Title IX claim based on the circumstantial evidence available. The University of Montana's School of Social Work had a single male faculty member. That male faculty member became the chairperson of the School of Social Work. Sontag Bowman claims that the University of Montana made its preference for the male candidate clear. The alleged facts that the University of Montana plainly preferred the only male candidate in the School of Social Work, and that he became the School's chairperson, represent sufficient circumstantial evidence for Sontag Bowman's claim to survive a 12(b)(6) motion at the pleadings stage. The University of Montana remains free to raise the issue on summary judgment if Sontag Bowman fails to provide sufficient evidence of discrimination. *See, e.g.*, *Means v. City of Chicago*, 535 F. Supp. 455, 461 (N.D. Ill. 1982). The Court will deny Defendants' motion to dismiss.

## II.   The Court need not address the good faith and fair dealing claim

Defendants argue that Sontag Bowman's good faith and fair dealing claim is not actionable without a Title IX claim. (Doc. 9 at 14-15). The Court need not

address this argument having determined that Sontag Bowman has sustained a Title

IX claim.

## ORDER

Accordingly, **IT IS ORDERED** that:

•   Defendants' Motion to Dismiss (Doc. 8) is **DENIED**.

DATED this 31st day of January, 2022.

_____
Brian Morris, Chief District Judge
United States District Court