IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CATHERINE COLE, BARBARA KOOSTRA, MARY-ANN SONTAG BOWMAN, and RHONDIE VOORHEES, | **CV-21-88-M-BMM**<br><br>**ORDER** |
| Plaintiffs, | |
| v. | |
| MONTANA UNIVERSITY SYSTEM, UNIVERSITY OF MONTANA– MISSOULA, and JOHN DOE DEFENDANTS 1-50, | |
| Defendants. | |

**INTRODUCTION**

Plaintiffs Catherine Cole, Barbara Koostra, Mary-Ann Sontag Bowman, Rhondie Voorhees, Courtney Babcock, Laura Berkhouse, Ruth Ann Burgad, Jennifer Cooper, Cindy Ferguson, Frieda Houser, Sherrie Lindbo, Jennifer McNulty, Kathleen Reeves, Vida Wilkinson, and two Jane Does ("Plaintiffs") filed this action alleging breach of contract claims and claims under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq. ("Title IX") against the Montana University System ("MUS") and the University of Montana ("UM") (collectively "Defendants"). (Doc. 53.)

Plaintiffs and Defendants most recently filed competing motions, in support

1

of class certification, and to deny class certification, respectively, in the fall of 2022. (Doc. 36); (Doc. 33.) The Court granted Defendants' Motion to Deny Class Certification and denied without prejudice Plaintiffs' Motion for Class Certification on October 3, 2022. (Doc. 58.)

Plaintiffs filed a Third Amended Complaint on January 6, 2023, in which they seek to add Jackie Hedtke ("Hedtke") and Laura John ("John") as plaintiffs. (Doc. 65.) Defendants have filed a Motion to Dismiss the claims of Hedtke and John. (Doc. 66.) Defendants argue that Hedtke's and John's claims fall outside the statute of limitations. (*Id.*) Plaintiffs have filed a Motion to Amend their Third Amended Complaint (Doc. 80) and a Motion to Continue Scheduling Order Dates. (Doc. 82.) The Court held hearings on these Motions on February 17, 2023 and April 10, 2023. (Doc. 77); (Doc. 100.) The Court will address by separate Order Plaintiffs' Motion to Continue Scheduling Order Dates.

## BACKGROUND

Plaintiffs are women suing Defendants for violation of Title IX and breach of the covenant of good faith and fair dealing relating to their employment contracts. (Doc. 65.) Plaintiffs allege generally that Defendants discriminated against them on the basis of sex in violation of Title IX. Plaintiffs claim that Defendants fostered a "good ol' boys club culture, favoring male athletes and employees, while excluding

women from participation in activities and benefits regularly afforded to their male counterparts." (Doc. 35 at 9.)

Plaintiffs also allege that Defendants breached the implied covenant of good faith and fair dealing contained within each Plaintiff's employment contract with Defendants. Plaintiffs claim that "Defendants breached the implied covenant of good faith and fair dealing by depriving Plaintiffs and the putative class the Title IX benefits to which they were lawfully entitled." (Doc. 65 ¶ 447.)

Hedtke's claims involve her tenure as an Assistant Director for Operations at UM's Adams Center between her hiring in 2006 and UM's failure to renew her contract some time in 2013. (*Id.* ¶¶ 331-47.) John's claims involve her time as a Ph.D. candidate in UM's Clinical Psychology Program. (*Id.* ¶¶ 348-71.) John spent five years, from 2006 to 2011, in the Clinical Psychology Program and alleges that UM terminated her Ph.D. candidacy in 2011. John claims that UM would allow her only to pursue a lesser degree after 2011: "[a]fter 5-years in the Department, the Chair informed [] John that she was 'not Ph.D material' and would not receive her Ph.D from UM. The Chair had decided for Ms. John that she could only pursue and receive a master's degree." (*Id.* ¶¶ 348-71.) John alleges that her relationship with Defendants ended in 2015, but she does not detail the circumstances of this ultimate termination. (Doc. 70 at 5.)

## DISCUSSION

## I.    Defendants' Motion for Partial Dismissal (Doc. 66)

*Legal background*

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal proves appropriate under Rule 12(b)(6) where the complaint lacks sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hospital Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

A complaint must contain sufficient factual matter to state a claim for relief plausible on its face to survive a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). A claim appears plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The Court must accept all allegations of material fact contained in the complaint as true when evaluating a Rule 12(b)(6) motion. *Johnson v. Lucent Technologies Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011). The Court does not weigh the facts at the Rule 12(b)(6) stage but merely assesses the sufficiency of Plaintiff's allegations. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

The Court should grant a motion to dismiss based on expiration of the statute of limitations "if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Supermail Cargo,*

*Inc. v. U.S.,* 68 F.3d 1204, 1206 (9th Cir.1995) (quoting *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir.1980)). The Court may grant this type of motion to dismiss when "the running of the statute is apparent on the face of the complaint." *Jablon,* 614 F.2d at 682. The Court examines separately the statute of limitations for each type of claim at issue.

Hedtke and John have joined the preexisting Plaintiffs in asserting that Defendants violated Title IX (Doc. 65 ¶¶ 421-40) and breached the implied covenant of good faith and fair dealing. (*Id.* ¶¶ 441-48.) Title IX of the Education Amendments of 1972 provides that protected persons shall not "on the basis of sex [. . .] be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Montana's statute of limitations for personal injury actions applies to Title IX claims. *See Stanley v. Trustees of California State Univ.*, 433 F.3d 1129, 1136 (9th Cir. 2006). Montana law has established a three-year statute of limitations for personal injury claims. Mont. Code Ann. § 27-2-204(1); *see Slice v. Schweitzer*, 2008 WL 5435338, at *7 (D. Mont. June 5, 2008).

"'[T]he covenant [of good faith and fair dealing] is a mutual promise implied in every contract that the parties will deal with each other in good faith, and not attempt to deprive the other party of the benefits of the contract through dishonesty or abuse of discretion in performance.'" *Phelps v. Frampton,* 170 P.3d 474, 482

(Mont. 2007) (quoting *Beaverhead Bar Supply v. Harrington,* 805 P.2d 560, 564 (Mont. 1991)). Claims for breach of the implied covenant claims may sound in tort or in contract. Some of these contract-based claims fall under an extended, eight-year statute of limitations. *See, e.g.*, *Story v. City of Bozeman,* 791 P.2d 767, 776 (Mont. 1990), *overruled on other grounds by Arrowhead Sch. Dist. No. 75 v. Klyap,* 79 P.3d 250 (Mont. 2003); Mont. Code Ann. § 27-2-202(1).

This eight-year statute of limitations does not apply to claims based on certain public contracts with the State of Montana's public agencies. Disputes between a contractor and a public agency require a court action to commence within one year after "the cause of action arises" when the contracting agency provides no settlement procedure. Mont. Code Ann. § 18-1-402(2). Defendants here represent public contracting agencies for the purposes of this statutory time limitation. Mont. Code Ann. § 18-1-101(c)(i).

"A claim or cause of action accrues" under Montana law "when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action." Mont. Code Ann. § 27-2-102(a).  A statute of limitations begins to run, in other words, "when all elements of a claim, including [injury and] damages, have occurred." *Estate of Watkins v. Hedman, Hileman & Lacosta,* 91 P.3d 1264, 1269 (Mont. 2004).

*The statutes of limitations applicable to Hedtke's and John's claims*

Defendants' argument in support of dismissal proves simple. Defendants argue that Hedtke's and John's Title IX claims accrued at the latest in 2013 and 2011 or 2015, respectively, when UM failed to renew Hedtke's contract and John's time as a Ph.D candidate in the Clinical Psychology department ended. (Doc. 67 at 9-10); (Doc. 94 at 11.) Three years represents the statute of limitations for Title IX actions in Montana. *See Stanley*, 433 F.3d at 1136; Mont. Code Ann. § 27-2-204(1). Defendants contend that Hedtke's and John's claims prove time-barred because they did not bring their respective Title IX claims within three years of the termination of their relationships with Defendants—within three years of 2013 for Hedtke and within three years of 2011, or 2015, for John. (Doc. 67 at 10-12.) Defendants ask the Court to dismiss Hedtke's and John's claims for this reason. (Doc. 67 at 12.)

Hedtke and John do not dispute that Title IX claims remain subject to a three-year statute of limitations. (Doc. 70 at 6.) The Court agrees. The alleged events related to Hedtke occurred between 2006 and 2013. The alleged events related to John occurred between 2006 and, at the latest, 2015. (Doc. 65 at ¶¶ 348-59); (Doc. 70 at 6.) These dates, as Defendants point out, required Hedtke to bring her Title IX claim by 2016 and John by 2018. Hedtke's and John's Title IX claims prove time-barred for this reason.

Hedtke and John contend that their contract-based claims should fall under Mont. Code Ann. § 27-2-202(1)'s eight-year statute of limitations. Application of this statute of limitations would allow them to join suit against Defendants regardless of the three-year limitation governing their Title IX claims. (Doc. 70 at 6.) Hedtke and John allege that they both entered contracts with Defendants. (Doc. 65 ¶ 443.) Hedtke and John allege that Defendants breached those contracts by violating the implied covenant of good faith and fair dealing, which represents a component of every contract under Montana law. (*Id.* ¶¶ 446-47.) Hedtke and John encourage the Court to exercise supplemental jurisdiction over these claims and allow them to proceed as timely for this reason. (Doc. 70 at 8.)

Hedtke and John contend that Plaintiffs' filing this suit tolls the applicable statute of limitations for the pendency of a putative class action as it relates to unnamed class members' individual claims such as theirs. (*Id.* at 7); *see also American Pipe & Constr. Co.* v. *Utah*, 414 U. S. 538 (1974). Plaintiffs brought this putative class action on August 4, 2021. (Doc. 5.) Hedtke and John do not identify the specific date signifying the end of their contractual relationships with Defendants, but they assert that discovery will show these dates fell after August 4, 2013, and thus within eight years of August 4, 2021. (Doc. 70 at 9.)

Hedtke and John relatedly contend that any attempt by the Court to apply the one-year limitation that Mont. Code Ann § 18-1-402 sets forth for contract disputes

involving the State of Montana would misinterpret the statute. (Doc. 90 at 6-7.) They argue that the specific language of Title 18 indicates that it does not apply to employment contracts between Defendants, or any state agency for that matter, and its public employees. (*Id.* at 6-7.) Hedtke and John instead contend that Mont. Code Ann. § 18-1-402 concerns only contracts between public agencies and private organizations, such as construction contractors. (*Id.* at 8-9.) They point out that the provision, "Public Contracts," comprises subjects seemingly far removed from the administration and regulation of the types of contracts a public employee would enter with the State.

Title 18's chapters govern, for example, construction contracts, the leasing of state buildings, state-tribal cooperative agreements; establish the Montana Procurement Act; and regulate the sale of State property, among other similar subjects. Title 18, Mont. Code Ann. Other parts of Title 18, Chapter 1 concern competitive bidding procedures, including regulation of bidding preferences for public contracts awarded for "the purchase of goods and for construction, repair, and public works" (Title 18, Chapter 1, Part 1); bid security requirements for the public authorities that solicit bids for public works projects (Title 18, Chapter 1, Part 2); and the procedures private entities awarded public contracts use to seek prepayment of a portion of the funds they are due (Title 18, Chapter 1, Part 3). *See* Mont. Code Ann. §§ 18-1-101 to -304. The Court agrees with Plaintiffs that the weight of Title

18 addresses itself to the regulation of contracts for public works rather than long-term public employees.

A review of the Montana Supreme Court's historic, though limited, application of Mont. Code Ann. § 18-1-402 would seem to confirm this understanding. The Montana Supreme Court in *Lutey Construction-The Craftsman v. State*, 851 P.2d 1037, 1040 (Mont. 1993), applied Mont. Code Ann § 18-1-402 to a contract dispute between the State of Montana and a private construction company contracted to renovate the Yellowstone River Trout Hatchery. *Zook Bros. Const. Co. v. State*, 556 P.2d 911 (Mont. 1976), similarly evaluated the timeliness of a breach of contract claim under the predecessor to Mont. Code Ann. § 18-1-402 involving a construction company and the Montana Department of Highways.

Justice Rice, in a dissenting opinion, appears to have articulated expressly this understanding of Title 18's purpose. The Montana Supreme Court in *McDaniel v. State*, 208 P.3d 817 (Mont. 2009), determined that Mont. Code Ann. § 18-1-404(1), a statute not at issue in this case, waived the State's immunity as to all express contracts, including, in the majority's view, a written agreement between the Montana Department of Corrections and a criminal supervised releasee. Justice Rice's dissent identified several flaws with this approach. Relevant here, Justice Rice's dissent described Title 18's purpose as regulating "resident bidders and nonresident bidders, contracts for goods, and construction, repair and public works,

hiring preferences, bid security, contracting entities, advertisement for bids, forfeiture of contracts, prepayment of public contractors, and such like." *McDaniel v. State*, 208 P.3d 817, 833 (Mont. 2009) (Rice, J., dissenting) (quotations omitted).

Justice Rice's dissent noted that Title 18 had "nothing to do" with the underlying dispute concerning violations of a written probation conditions agreement. This analysis would seem to apply here. An "individual statute may not be read and properly understood in a vacuum," and the Court struggles to understand how Mont. Code Ann. § 18-1-402, a single section regulating State contract dispute procedures, housed in a Title devoted to regulation of State procurement, bidding, and public works contracts, could have "[any]thing to do" with the employment contracts of professors, teaching assistants, department heads, administration staff, and other traditional employee roles Plaintiffs filled within the State's university system. *Id.* (Rice, J., dissenting) (quoting *Peretti v. State*, 777 P.2d 329 (Mont. 1989)).

Notwithstanding the Court's view of the limited applicability of Mont. Code Ann. § 18-1-402 to public works or other procurement-type contracts, the Montana Supreme Court appears to have accepted that Mont. Code Ann. § 18-1-402 governs *all* contract actions against the State. The most recent application of Mont. Code Ann. § 18-1-402 involved an employment contract action brought by a soccer coach employed by the University of Montana. *Plakorus v. Univ. of Mont.*, 477 P.3d 311,

315 (Mont. 2020). *Plakorus*, in a mechanical application of the statute, established that "[t]he State of Montana is subject to suit in district court 'on any claim or dispute arising out of any express contract' with the State or a state entity or officer. . . . Such claims are governed by Title 18, ch. 1, part 4." *Plakorus*, 477 P.3d at 315. The Montana Supreme Court recited the statute's requirement that contract claims against the State be brought "within one year after . . . the claim accrues," evaluated the timing of the university employee's claim, and concluded that claim proved time-barred. *Id.*; Mont. Code Ann. § 18-1-402. The Court believes this analysis lacks nuance as to the type of contracts addressed in Title 18, but it cannot ignore the direct application of Mont. Code Ann. § 18-1-402 to a public employee similarly situated to Hedtke and John. The Court need not distinguish *Plakorus*'s counterintuitive result, however, to dispose of Defendants' Motion to Dismiss.

The Court previously explained that Hedtke and John have alleged that they each entered contracts with Defendants. (Doc. 65 ¶¶ 56-58, 71-72.) Hedtke and John claim Defendants breached these contracts by violating the implied covenant of good faith and fair dealing attached to these contracts. (*Id.*) They specifically allege that Defendants breached the implied covenant by violating Title IX. (*Id.* ¶ 447.) Hedtke and John allege no other potential breach of any contract term or provision. Hedtke and John instead remind the Court that "[a] breach of an express term of the contract is not a prerequisite to a breach of the implied covenant." (*Id.* ¶ 445.)

"'[T]he covenant [of good faith and fair dealing] is a mutual promise implied in every contract that the parties will deal with each other in good faith, and not attempt to deprive the other party of the benefits of the contract through dishonesty or abuse of discretion in performance.'" *Phelps v. Frampton,* 170 P.3d 474, 482 (Mont. 2007) (quoting *Beaverhead Bar Supply v. Harrington,* 805 P.2d 560, 564 (Mont. 1991)). A breach of the implied covenant represents a breach of the contract itself. *Story v. City of Bozeman,* 791 P.2d 767, 776 (Mont. 1990), *overruled on other grounds by Arrowhead Sch. Dist. No. 75 v. Klyap,* 79 P.3d 250 (Mont. 2003) A claim for a breach of contract, however, may sound in tort or in contract, and the action remains subject to the statute of limitations for the applicable theory. *Northern Montana Hospital v. Knight*, 811 P.2d 1276, 1978-79 (Mont. 1991).

This rule applies equally to an alleged contract breach based upon a violation of the implied covenant of good faith and fair dealing. The Montana Supreme Court has instructed that courts should look to "the gravamen of the action rather than relying on the label given to the claim" when determining which statute of limitations applies. *Tin Cup Cty Water and/or Sewer Dist. V. Garden City, et al.*, 200 P.3d 60 (Mont. 2008). Hedtke's and John's arguments in favor of the eight-year statute of limitations governing contract actions suggest they would seek to pursue their claims under a contract theory. (Doc. 70 at 9.) The Third Amended Complaint

instead makes clear that their alleged contract breach claims sound in tort. (*See* Doc. 65 ¶ 447.)

A plaintiff may pursue a contract cause of action only if the essence of their complaint sounds in contract. The contract statute of limitations applies, in other words, "only if the alleged breach of a specific provision in a contract provides the basis of the plaintiff's claims." *Tin Cup*, 200 P.3d at 67. A plaintiff "must point to the violation of a specific contractual provision in order for [their] complaint to sound in contract." *Id.* The Court has just explained that Hedtke and John failed to allege that Defendants breached any express terms or provisions of their contracts. Hedtke and John instead have asserted only that those violations of Title IX, a tortious act itself subject to Montana's personal injury statute of limitations, form the basis of their breach of contract claims.

Montana's statute of limitations for torts applies to their claims for this reason: Hedtke and John have claimed that Defendants breached their "legal dut[ies] imposed by law [*i.e.*, Title IX] that a[rose] during the performance of [their] contracts." *Id.* at 67 (citing *Northern Montana*, 811 P.2d at 1278-79; *Guest v. McLaverty*, 138 P.3d 812 (Mont. 2006)). The Montana Supreme Court specifically has cautioned that a party may not reframe the essence of their claim for relief to access a more forgiving statute of limitations. *See Guest v. McLaverty*, 138 P.3d at 813; *Tin Cup*, 200 P.3d at 67. The Court determines that tort law provides the basis

14

for Hedtke's and John's alleged breach of the implied covenant claims. The three-year statute of limitations governing tort actions under Montana law applies to their contract claims. Mont. Code Ann. § 27-2-204.

Application of the three-year statute of limitations bars Hedtke's and John's claims. Hedtke has alleged that UM failed to renew her contract some time in 2013. (Doc. 65 ¶¶ 56-58, 71-72.) John has alleged that, though her department head removed her from her Ph.D. program in 2011, her relationship with Defendants continued through 2015. (*Id.*) The most generous view of the chronology would place any alleged breach by Defendants and the resulting damages as late as 2013 for Hedtke and 2015 for John. Mont. Code Ann. § 27-2-204 requires Hedtke and John to have brought their claims within three years of these dates. The Court determines that Hedtke's and John's contract claims prove time-barred by the three-year statute of limitations for tort claims in Mont. Code Ann. § 27-2-204.

## II.   Plaintiffs' Motion for Leave to Amend (Doc. 80)

Plaintiffs seek leave to amend their Complaint to add one additional plaintiff. (Doc. 81 at 3.) This proposed plaintiff, Vandi Theriot ("Theriot"), differs from all other named Plaintiffs in that she was never formally employed by Defendants. Theriot instead alleges her discrimination arose from Defendants' consideration, and ultimate rejection, of her candidacy for a Vice Presidential position. (Doc. 81 at 3-5.)

Plaintiffs allege that Theriot applied for a position as the Vice President of People and Culture in Fall 2022, and, after her selection, went through an extensive, three-monthslong vetting process. (*Id.* at 4.) Plaintiffs allege that UM forced Theriot to submit to additional vetting procedures due to President Seth Bodnar's desire to hire a different, unqualified candidate. (*Id.*) Plaintiffs claim that President Bodnar promised Theriot on January 20, 2023, that she would receive a final contract on January 27, 2023, but that, in the interim, she was compelled to complete significant preliminary work for the People and Culture sector before being formally hired. (*Id.* at 4-5.)

Plaintiffs assert that Theriot observed President Bodnar's negative response to her work and aversion to her hiring, including "treat[ing] [her] with distrust and micromanagement" and treating her differently from a "young, athletic [] Candidate." President Bodnar informed Theriot on January 25, 2023, that Defendants would not proceed with the offer. (*Id.* at 5-6.) Plaintiffs assert that Theriot withdrew from the prospective position. (*Id.*) Plaintiffs also alert the Court that, at the time they next seek certification, they intend to include in their proposed class definition women who were students and/or sought employment with Defendants. (*Id.* at 6.) Plaintiffs request that the Court allow amendment to the proposed class definition to reflect the scope of the class they may seek to certify. (*Id.*) Plaintiffs also ask that the Court allow them to remove all allegations as to

named Plaintiff Kathleen Reeves, considering the unopposed motion to dismiss her claims. (*Id.* at 7.)

Plaintiffs contend that good cause exists to allow these amendments as to Theriot in large part because of the timing of Theriot's alleged injury, which did not occur until after the January 6, 2023 deadline. (Doc. 81 at 6); (Doc. 64.) Plaintiffs assert that they could not have joined Theriot any sooner. (Doc. 81 at 9.) The Court will allow Plaintiffs once more to amend their Complaint as to Theriot. The Court also will allow the amendments as to Kathleen Reeves. The Court will not allow Plaintiffs to amend their class description. (*See* Doc. 81-2 at 67.) Plaintiffs have stipulated that there exists no legal requirement for this amendment, and, in light of Defendants' claims of prejudice as to the introduction of students into the Complaint, the Court sees no reason to allow a purportedly unnecessary amendment. (Doc. 81 at 6); (Doc. 92 at 18.) Plaintiffs may seek to certify whatever class they believe will survive review under Federal Rule of Civil Procedure 23. Plaintiffs must seek this certification with the Complaint they have pleaded.

Federal Rule of Civil Procedure 16 governs a party's ability to amend their complaint once a court files a scheduling order pursuant to the Rule. *Johnson v. Mammoth Recreations*, 975 F.2d 604, 608 (9th Cir. 1992). A party seeking leave to amend its pleading after the date specified in a scheduling order first must show "good cause" for the amendment under Federal Rule of Civil Procedure 16(b). *Id.*

Good cause for modification exists if the deadlines "cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* The moving party may then attempt to meet the requirements of Federal Rule of Civil Procedure 15. *Id.* at 608.

Plaintiffs moved to amend their Third Amended Complaint approximately one month after the Court's revised amendment of the pleadings deadline that Plaintiffs explicitly requested. (Doc. 64.) Plaintiffs have alleged that Theriot, as with all named plaintiffs and the putative class, has suffered discrimination at the hands of Defendants. Plaintiffs have alleged that Theriot suffered discrimination on the basis of sex in part due to the "good ol' boys club" culture that prioritizes youth and perceived attractiveness over qualifications. (Doc. 81 at 6.) Plaintiffs have identified this alleged cultural flaw as a root source of Defendants' discrimination since the inception of this litigation. (Doc. 1); (Doc. 35); (Doc. 65.)

Plaintiffs have alleged that Theriot, though not Defendants' employee at the time of the alleged discrimination, likely has suffered similar types of discrimination under Title IX, culminating in an adverse employment action. (Doc. 81.) Plaintiffs imply that Theriot performed uncompensated work for Defendants before President Bodnar withdrew her employment offer. (*Id.* at 5-6.) Theriot's claims prove sufficiently similar to Plaintiffs' existing claims such that the Court does not view them as fundamentally shifting the substance of this case.

The Court accepts that there exists some parallel between Theriot's claims and those of Plaintiffs. As a result, the Court determines that Plaintiffs could not have joined Theriot significantly sooner than the timing of their Motion to Amend. Theriot's claims did not accrue until January 25, 2023, approximately three weeks after the deadline the Court set for amendments of pleadings. Plaintiffs sought leave to amend their Complaint only a few weeks later. The Court determines that Plaintiffs reasonably could not have presented Theriot's claims by the January 6, 2023, deadline. *Johnson v. Mammoth Recreations*, 975 F.2d 604, 608 (9th Cir. 1992). Good cause exists to allow Plaintiffs' amendments as to Theriot. Fed. R. Civ. P. 16(b)(4).

A court's evaluation of good cause does not equate, however, to Federal Rule of Civil Procedure 15's evaluation of the propriety of any amendment. *Johnson*, 975 F.2d at 608 (citing *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987)). The Court must "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The grant or denial of leave to amend represents a decision that rests within the Court's sound discretion. 35A, C.J.S. Federal Civil Procedure, § 378. Rule 15's liberal policy in favor of amendment focuses on undue prejudice to the opposing party, as well as any bad faith underlying the motion and the futility of the amendment, among other considerations. Fed. R. Civ. P. 15. The circumstances and timing of Theriot's alleged discrimination and Plaintiffs' relatively efficient pursuit

of amendment indicate the absence of bad faith in this Motion to Amend. The Court will focus its Rule 15 analysis on any undue prejudice to Defendants. Fed. R. Civ. P. 15.

The Court's most recent Scheduling Order included an amendment deadline of January 6, 2023. (Doc. 64). Plaintiffs provided Defendants notice that they would seek to amend during the February 17, 2023, hearing in this matter and filed their Motion to Amend on February 22, 2023, just over a month after the deadline. (Doc. 77); (Doc. 80.) Any prejudice Defendants experienced as a result of the January 6, 2023, deadline cannot have compounded into undue prejudice by the passage of a few weeks. The proposed amendment comes more than nine months in advance of trial and along with both parties' requests to extend discovery deadlines by up to sixty days. (Doc. 83 at 6-7.) The parties relatedly acknowledge that they have yet to complete significant additional discovery. (Doc. 100.) The realities of the progress of this case suggest that joining Theriot does not represent the type of undue prejudice from which Rule 15 seeks to protect defendants.

The Court's decision to allow Plaintiffs to join Theriot does not mean that Plaintiffs may change or add legal claims. Theriot has alleged facts that likely plead a theory of Title IX discrimination that Plaintiffs already have established. (Doc. 81); (Doc. 35.) The addition of Theriot's claims likewise does not translate into permission to change or add novel legal claims or to seek further amendment. The

proximity of Theriot's allegations to the amendment deadline represents the most significant determinant in the Court's exercise of its discretion. The Court will view any future amendments with significant caution.

The Court also cannot determine that Plaintiffs' amendments as to Theriot would prove futile at this stage. (Doc. 92 at 15.) The parties acknowledge that they have not yet completed discovery. Plaintiffs' Motion to Amend comes in advance of any renewed motion for class certification. (*See* Docket.) The Court will not deem the amendment futile while the factual record remains this undeveloped. The Court concludes that justice requires allowing Plaintiffs to amend their Complaint as to Theriot. *See* Fed. R. Civ. P. 15(a)(2). The Court will grant motion as to Theriot for these reasons.

## III.   Plaintiffs' Motion to Continue Scheduling Order Dates (Doc. 82)

Plaintiffs seek to extend the deadlines set in the current Scheduling Order (Doc. 64) to allow for additional discovery in anticipation of the Court's granting their Motion to Amend. (Doc. 82); (Doc. 83 at 6.) The Court will address this request by separate Order.

## CONCLUSION

The Court GRANTS Defendants' Motion to Dismiss. (Doc. 66.) The Court GRANTS, in part, and DENIES, in part, Plaintiffs' Motion to Amend. (Doc. 80.)

## ORDER

Accordingly, **IT IS ORDERED** that:

1. Defendants' Motion to Dismiss (Doc. 66) is **GRANTED**.

2. Plaintiffs' Motion to Amend (Doc. 80) is **GRANTED** as to Valerie Theriot and

   Kathleen Reeves. The Motion is otherwise **DENIED.**

   DATED this 4th day of May, 2023.

Brian Morris, Chief District Judge
United States District Court