**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

| | |
|---|---|
| CATHERINE COLE, BARBARA KOOSTRA, MARY-ANN SONTAG BOWMAN, RHONDIE VOORHEES, COURTNEY BABCOCK, LAURA BERKHOUSE, RUTH ANN BURGAD, JANE DOE 1, JENNIFER COOPER, CINDY FERGUSON, FRIEDA HOUSER, SHERRIE LINDBO, JENNIFER MCNULTY, JANE DOE 2, VIDA WILKINSON, and VANDIE THERIOT, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>    v.<br><br>MONTANA UNIVERSITY SYSTEM, UNIVERSITY OF MONTANA-MISSOULA, and JOHN DOE DEFENDANTS 1-50,<br>                    Defendants. | **CV-21-88-M-BMM**<br><br><br>**ORDER** |

**INTRODUCTION**

Defendants Montana University System and the University of Montana-Missoula (collectively "Defendants") filed a motion for partial summary judgment on claims brought by Plaintiffs Courtney Babcock ("Babcock") and Laura Berkhouse ("Berkhouse") on July 28, 2023. (Doc. 113.) Plaintiffs Babcock and

Berkhouse oppose this motion. (Doc. 118.) The Court held a hearing on this motion on October 16, 2023, in Helena, Montana. (Doc. 123.) Defendants filed a notice of supplemental authority on October 20, 2023. (Doc. 131.)

## FACTUAL BACKGROUND

Plaintiffs Catherine Cole, Barbara Koostra, Mary-Ann Sontag Bowman, Rhondie Voorhees, Courtney Babcock, Laura Berkhouse, Ruth Ann Burgad, Jane Doe 1, Jennifer Cooper, Cindy Ferguson, Frieda Houser, Sherrie Lindbo, Jennifer McNulty, Jane Doe 2, Vida Wilkinson, and Vandie Theriot (collectively "Plaintiffs") are women suing Defendants for violation of Title IX and for breach of the covenant of good faith and fair dealing relating to their employment contracts. (Doc. 104.) Plaintiffs allege generally that Defendants discriminated against them on the basis of sex in violation of Title IX. Plaintiffs claim that Defendants fostered a "good ol' boys club culture, favoring male athletes and employees, while excluding women from participation in activities and benefits regularly afforded to their male counterparts." (*Id.* at 9.) Plaintiffs also allege that Defendants breached the implied covenant of good faith and fair dealing contained within each Plaintiff's employment contract with Defendants. (*Id.*) Plaintiffs claim that "Defendants breached the implied covenant of good faith and fair dealing by depriving Plaintiffs and the putative class the Title IX benefits to which they were lawfully entitled." (*Id.* at 71.)

Berkhouse alleges that she requested a disability accommodation from the University of Montana ("UM") to lower her work to 20-hours per week. (*Id.* at 33.) Berkhouse claims that UM denied the accommodation, and, shortly thereafter, UM eliminated her position and terminated her with one day notice. (*Id.*) Babcock alleges that she experienced a hostile, discriminatory culture and environment during her employment as UM's Head Cross Country Coach and Assistant Track and Field Coach for men's and women's teams. (*Id.* at 31-32.) Babcock claims that male coaches at UM belittled her. (*See id.* at 30.) Babcock alleges that she was the lowest paid coach in the Big Sky Athletic Conference, and that UM repeatedly denied her requested compensation increases. (*Id.* at 31.) Babcock claims that UM chose not to renew her contract after repeatedly denying her requests for increased compensation. (*Id.* at 32.)

## LEGAL BACKGROUND

The Court dismissed Jackie Hedtke ("Hedtke") and Laura John's ("John") claims as being barred by the statute of limitations on May 4, 2023. (Doc. 103.) Plaintiffs filed their fourth amended complaint on May 8, 2023. (Doc. 104.)

## LEGAL STANDARD

Summary judgment proves appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the

outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine material fact dispute requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The evidence must be viewed in the light most favorable to the nonmoving party. *See Tennison v. City and Cty. of San Francisco*, 570 F.3d 1078, 1081, 1087 (9th Cir. 2009). All inferences drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S. 650, 651 (2014).

## DISCUSSION

Defendants argue that Berkhouse and Babcock's claims fall outside the applicable three-year statute of limitations. (Doc. 114 at 4.) The Court will first discuss Berkhouse's claims. The Court will then consider Babcock's claims.

### A. Whether Berkhouse's Claims are Barred by the Statute of Limitations.

The Court should grant a motion to dismiss based on expiration of the statute of limitations "if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206 (9th Cir.1995) (quoting *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir.1980)). Courts may grant this type of motion to dismiss when "the running of the statute is apparent on the face of the complaint." *Jablon*, 614 F.2d at 682.

Title IX of the Education Amendments of 1972 provides that protected persons shall not "on the basis of sex [. . .] be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). In considering Title IX claims, courts apply state statutes of limitations. *See Stanley v. Trustees of California State Univ.*, 433 F.3d 1129, 1136 (9th Cir. 2006). Montana law has established a three-year statute of limitations for personal injury claims. Mont. Code Ann. § 27-2-204(1); *see Slice v. Schweitzer*, 2008 WL 5435338, at *7 (D. Mont. June 5, 2008). The Court previously held that Montana's three-year statute of limitations for torts applies to Plaintiffs' claims. (Doc. 103 at 14.)

The parties agree that the statute of limitations bars Berkhouse's claims. (*See* Doc. 114 at 2); (Doc. 118 at 4.) Berkhouse last worked at UM on September 12, 2014. (Doc. 115-4 at 1.) Plaintiffs admit that Berkhouse's allegations are limited to the time that she was employed by UM. (Doc. 119 at 6.) The Court agrees that Berkhouse's claims fall outside the three-year statute of limitations established by Montana law. Berkhouse's claims could have been brought, at the latest, by September 12, 2017.

## B. Whether Babcock's Claims are Barred by the Statute of Limitations.

Federal law governs the "determination of the point at which the limitations period begins to run*." Stanley*, 433 F.3d at 1136 (citing *Hoesterey v. City of Cathedral City*, 945 F.2d 317, 319 (9th Cir.1991)). "[T]he touchstone for

determining the commencement of the limitations period is notice." *Id.* (citation omitted). "[U]nder federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008). "The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Stanley*, 433 F.3d at 1136 (quoting *Abramson v. Univ. of Haw.*, 594 F.2d 202, 209 (9th Cir. 1979).

Defendants contend that Babcock's claims accrued over nine years before the filing of the second complaint and over eight years before this action arose. (Doc. 114 at 3.) It remains undisputed that Babcock worked at UM from 2008 to June 2013. (*Id.* at 6.) Defendants argue that Babcock's claims relate to her employment at UM. (*Id.* at 12.) Plaintiffs counter that Babcock's claims stem from her reporting a Title IX violation to UM in 2020 and UM failing to take any action upon receiving Babcock's complaint. (Doc. 118 at 6.) Plaintiffs' contention proves unavailing.

The fourth amended complaint makes no mention of Babcock's 2020 Title IX report. (*See* Doc. 104.) The fourth amended complaint instead alleges that Babcock experienced a "hostile and discriminatory culture and environment," during her employment at UM. (*Id.* at 31-32.) Babcock confirmed that her claim links her contract not being renewed in 2013 to an allegedly "hostile and discriminatory

culture and environment" which she asserts amounts to a Title IX violation. (Doc. 115-2 at 6.)

Babcock knew or had reason to know of her Title IX injury by at least 2013. Babcock stated that she "contemplated raising my voice . . ." following her separation from UM in 2013. (Doc. 115-2 at 5.) Babcock confirmed that "raising my voice," in this context meant potentially filing a lawsuit. (*Id.*) Babcock corresponded with Jean Gee ("Gee"), the Senior Associate Athletic Director at UM via voicemail and email, and potentially an in-person meeting, on or about June 23, 2010. (Doc. 119-1 at 3.) Babcock stated that she raised the issues of "workspace, including the desk to office situation, [and] disbursement . . .." (*Id.* at 2.) Babcock also commented that "I didn't feel like women were equal or supported in the same capacity as men." (*Id.*) Babcock confirmed that she used the phrase "Title IX" in the 2010 email to Gee. (*Id.* at 3.)

Babcock emailed Gee again on October 24, 2017. (Doc. 115-2 at 4.) Babcock stated that the purpose of the 2017 email was to "get women on the same plain [*sic*] as men." (*Id.*) Babcock further reiterated that the 2017 email was about "women's equality in general and trying to make a change, so that [discrimination] doesn't keep happening and so I can make a difference for the next—for the people that come after me." (*Id.*) Babcock confirmed that her 2020 email to Lucy France ("France") was "fairly similar" to the 2017 email to Gee. (*Id.*)

Babcock's 2010 and 2017 email communications, considered alongside her deposition testimony, indicate that she knew of her injury allegedly caused by unequal treatment based on sex and the presence of a "good ol' boys" club culture at UM at least by the end of her employment with UM in 2013. Babcock raised issues that substantially mirror the issues raised in her complaint: that she received inadequate office space; that she was denied chances to earn increased compensation; and that she was treated worse than her colleagues on the basis of sex. (*Compare* Doc. 104 at 29-32); (Doc. 115-2 at 4); (Doc. 119-1 at 2-3.)

Plaintiffs contend that Babcock's claims finally accrued when she reported the alleged Title IX violations to France on May 4, 2020, and UM failed to take action. (Doc. 118 at 5); (Doc. 118-1 at 1.) Plaintiffs cite to *Stanley* for the proposition that the date at which a plaintiff files her complaint of Title IX violations represents the appropriate accrual date. (Doc. 118 at 5) (citation omitted.) Plaintiffs' reading of *Stanley* mistakenly correlates the filing of the complaint with knowing of an injury as the mechanism triggering a claim's accrual.

The Ninth Circuit in *Stanley* determined that the plaintiff in that case had "reason to know of the injury" when she filed a claim with the State Board of Control in April 2001. 433 F.3d at 1136. The plaintiff's filing of the complaint with the State Board of Control in *Stanley* demonstrated that the plaintiff had knowledge of her alleged injury. *Id.* The mere act of filing, however, did not have independent

8

significance concerning the accrual of the *Stanley* plaintiff's claim. *Id.* Plaintiffs' argument, taken to its maximum, effectively would allow a claimant to resuscitate long dormant Title IX claims by filing institutional complaints before filing suit. Such interpretation would render statutes of limitation non-existent for Title IX. The material facts, viewed in the light most favorable to Plaintiffs, indicate that Babcock's claim accrued at the latest by June 30, 2013, the last day of her employment at UM. (*See* Doc. 115-1 at 1.) Montana's three-year statute of limitations bars Babcock's claims.

### C. Whether Babcock Meets the Requirements for Equitable Tolling.

Plaintiffs argue that the Court should equitably toll the statute of limitations even if the statute of limitations bars Babcock's claims. (Doc. 118 at 8.) For equitable tolling to apply, the litigant must show that 1) she diligently pursued her rights and 2) an extraordinary circumstance prevented her from timely filing her claims. *Smith v. Davis*, 953 F.3d 582, 590 (9th Cir. 2020.) A party seeking equitable tolling "must show that [s]he has been reasonably diligent in pursuing h[er] rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing." *Id.* at 599–600. In evaluating the second element, the plaintiff must demonstrate, and a court should consider, based on all the facts and circumstances, whether that plaintiff experienced extraordinary circumstances preventing the plaintiff from acting with reasonable diligence in

timely filing a claim. *Id.* at 600. The party seeking equitable tolling bears the burden of establishing both elements. *Id.* at 590.

Plaintiffs fail to meet their burden to establish either element of equitable tolling. Plaintiffs point generally to principles of equity in arguing that Defendants have known about a multi-plaintiff suit against them for gender discrimination since 2021. (Doc. 118 at 11.) Plaintiffs contend that the evidence is not stale, and that Defendants will not be prejudiced by the Court considering the merits of Babcock's claim. (*Id.*) Plaintiffs do not address either element of equitable tolling set forth by the Ninth Circuit. Equitable tolling cannot save Babcock's claim.

### D. Whether Plaintiffs Should be Granted Leave to Amend Their Fourth Amended Complaint.

Federal Rule of Civil Procedure 15(a) provides that the trial court shall grant leave to amend freely "when justice so requires." Though leave to amend "shall be freely given when justice so requires," it "is not to be granted automatically." *In re Western States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013). A party must meet the more stringent requirements of Federal Rule of Civil Procedure 16(b) in situations where the deadline for pleading amendment has passed. Rule 16(b) requires a showing of good cause for amending the scheduling order to allow the filing of an amended pleading. Fed. R. Civ. P. 16(b)(4).

The good cause inquiry focuses on the diligence of the party seeking the amendment. *Johnson. v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.

1992.) Prejudice to the opposing party may provide an additional reason to deny the motion to amend. *Id.* If good cause is shown pursuant to Rule 16(b), then the Court turns to Rule 15(a) to determine whether the amendment should be allowed. The Ninth Circuit considers five factors in assessing whether to grant leave to amend: "1) bad faith; 2) undue delay; 3) prejudice to the opposing party; 4) futility of amendment; and 5) whether plaintiff has previously amended [their] complaint." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

Plaintiffs have demonstrated that good cause exists for pleading amendment. Plaintiffs assert that they only received evidence that UM failed to act on Babcock's 2020 email to France on July 7, 2023. (Doc. 118 at 8.) Defendants do not contend that Plaintiffs have not demonstrated good cause. (*See* Doc. 124.) Rather, Defendants focus their objection on Rule 15 considerations. (*See id.*)

Defendants argue that granting leave to amend will unduly delay the case. (Doc. 124 at 13.) The Court agrees. Plaintiffs added Babcock to this action in the second amended complaint, filed July 29, 2022. (Doc. 53.) Babcock's allegations have been the same or substantially similar in the second, third, and fourth amended complaints. (*Compare* Doc. 53); (Doc. 65); (Doc. 104.) Babcock claims she experienced a "hostile, discriminatory culture and environment" that led to her being belittled by male coaches, being the lowest paid coach in the Big Sky Athletic Conference, being provided with inadequate office space and funding, and being

11

denied compensation increases and opportunities to increase her compensation. (*See* Doc. 104 at 29-33.)

Defendants also argue that amending the pleading will be futile. (Doc. 124 at 14.) The Court agrees. Babcock's claims accrued, at the latest, when her employment ended at UM on June 30, 2013. Montana's three-year statute of limitations for personal injury claims would toll, at the latest, on June 30, 2016. Plaintiffs did not file this action until August 4, 2021. (*See* Doc. 1.) Babcock was not added to this action until July 29, 2022. (*See* Doc. 53.) No further amendment or factual allegation could overcome this determination.

The Court also finds that the number of previous amendments cuts against Plaintiffs' request to amend their complaint. This action has been pending since August 4, 2021. (*See* Doc. 1.) Plaintiffs have filed four complaint amendments in the subsequent two-year period. (*See* Doc. 5); (Doc. 53); (Doc. 65); (Doc. 104.) The Court determines that the Rule 15 factors, considered collectively, weigh against granting Plaintiffs leave to file a fifth amended complaint.

**ORDER**

1. Defendants' Motion for Partial Summary Judgment (Doc. 113) is

   **GRANTED.** Plaintiff Babcock and Berkhouse's claims are dismissed.

2. The Clerk shall enter judgment in favor of the Defendants accordingly.

   DATED this 23rd day of October 2023.

   _____
   Brian Morris, Chief District Judge
   United States District Court